CASANOVA, APPELLEE, *v.* WAGNER, APPELLANT.

(No. 619—Decided April 11, 1949.)

*Messrs. Catri & Catri,* for appellee.
*Messrs. Flynn, Py & Kruse* and *Mr. B. G. Zeiher,* for appellant.

FESS, J. This is an appeal on questions of law from a judgment entered on a verdict in the sum of $7,500 against the defendant.

Plaintiff was a passenger in an automobile traveling in a westerly direction on Monroe street in Sandusky, Ohio. When the car in which she was riding in the rear seat reached a point immediately under a traffic light with approximately one-half of the car beyond the center line of the intersection of Monroe and Deca-

tur streets, the car was struck at the left rear by a northbound car operated by the defendant and there-after crashed into a telephone pole at the northwest corner of the intersection, resulting in serious injury to the plaintiff.

Monroe street runs generally east and west and Decatur street runs north and south. Traffic at the intersection was controlled by the usual green, yellow and red signals. Plaintiff's evidence tended to show that the car in which plaintiff was riding had the green light in its favor until it reached the easterly crosswalk or until it reached a point directly under the traffic light in the center of the intersection. Defendant's evidence tended to show that the car driven by the defendant had the green light as it proceeded in a northerly direction into the intersection on Decatur street.

The evidence further disclosed that, immediately before the accident, skid marks were left by defendant's car on the east side of Decatur street, 17 feet in length and extending in a northwesterly direction from about a foot north of the southerly crosswalk of Monroe street to the point of impact a foot or so northeast of the center of the intersection. Skid marks were also inferentially made by plaintiff's car, running from the center of the intersection to a telephone pole with which such car collided at the northwest corner of the intersection.

Defendant's car struck the left rear of the car in which plaintiff was riding. Plaintiff's car thereafter crashed into the telephone pole at the northwest corner of the intersection. Photographs disclose a substantial dent in the left-hand door and that the left rear fender was torn from the body. The right rear corner of plaintiff's car was severely crushed in from top to bottom from colliding with the telephone pole. As a result of the collision, the rear

trunk door or lid was knocked off but the evidence is not clear as to whether this was caused by the impact of defendant's car or by the collision with the telephone pole. So far as speed is concerned, the evidence on behalf of each party was to the effect that each car was traveling between 20 and 25 miles per hour. The only evidence from which excessive speed on the part of the defendant might be inferred were the skid marks and the condition of the left side of plaintiff's car.

One of the assigned errors is that the court refused to charge upon the subject of defendant's right of way as requested after the general charge.

Plaintiff pleaded six allegations of negligence in her petition, and in his charge the judge submitted four of these:

(a) Driving against the red light contrary to an ordinance of Sandusky.

(b) Driving at a speed greater than was reasonable and proper.

(c) Failure to ascertain the presence and position of the automobile in which plaintiff was riding.

(d) Failure to exercise care in season to avoid striking the automobile in which plaintiff was riding.

Two interrogatories submitted by plaintiff were answered by the jury:

"Do you find the defendant, Harold J. Wagner, was negligent? Answer: 'Yes.'

"If your answer to interrogatory No. 1 is 'yes' please state of what such negligence consists. Answer: 'Skidding proves speed was too great.' "

The finding that defendant's speed was too great indicates that the jury found against the plaintiff upon the other allegations of negligence. *Masters v. N. Y. C. Rd. Co.*, 147 Ohio St., 293, 70 N. E. (2d), 898. Since proceeding against the red light was one of the allega-

tions of negligence submitted to the jury, it is therefore presumed that the defendant had the green light. It may be also inferred that plaintiff's driver ran the red light but this is immaterial, since contributory negligence of her driver cannot be imputed to plaintiff as a passenger.

During the trial, plaintiff introduced the following portion of section 57 of the Sandusky traffic ordinance:

"Section 57. Whenever traffic at an intersection is controlled by traffic control signals exhibiting colored lights or the word 'go' or 'caution' or 'stop', said lights and turns shall indicate as follows:

"Red or stop: Traffic facing signal, shall stop before entering the nearest crosswalk at the intersection, or at such other point as may be designated by the director and remain standing until green or go is shown alone.

"Red or caution: When shown alone or together with the green or go, traffic facing the signal shall stop before entering the nearest crosswalk, or designated line at the intersection.''

In his general charge, the judge read the first two above-quoted paragraphs and said:

"The portions of section 57 of this particular ordinance which the court has read to the jury, mean just what they say. Applied to this case, they mean simply this, that if, as defendant proceeded in a northerly direction in and along Decatur street and approaching Monroe street, either red or caution shown alone or together with the 'green' or 'go' signal, then it was the duty of defendant, as he approached said intersection to stop before entering the nearest crosswalk— that would be the crosswalk on the south side of Monroe street.

"And further, that as he approached in a northerly direction along Decatur street, toward Monroe street,

the color 'red' or the word 'stop' was exhibited by the traffic light, then it was the duty of the defendant to stop his automobile before entering the crosswalk on the south side of Monroe street, and not to proceed northerly until the green light was shown by such traffic signal.

"These portions of section 57 are expressive of a specific, mandatory and positive requirement, and it therefore follows that if, from a preponderance of the evidence in this case, the defendant violated the requirements of this ordinance, such proven violation would constitute negligence in and of itself, and you would be warranted in concluding that the defendant was guilty of negligence in such respect claimed by the plaintiff.

"On the other hand, it of course follows that if from all the evidence in the case, the defendant did not violate this portion of section 57, you would be compelled to conclude that defendant was not guilty of negligence as to this first claim made by the plaintiff."

The court then proceeded to charge upon the applicable portion of Section 6307-21, General Code, relating to speed, without any reference to the right or duty of a party entering an intersection having the green light. With respect to the remaining two claims of negligence, the court said in part:

"With respect to the nature, character and effectiveness of lookout maintained with respect to the stopping of his automobile and abating the speed thereof or diverting the course thereof, it was the duty of the defendant as to each and all of those particular matters to exercise that degree of care which a person of ordinary care and prudence is accustomed to exercise under circumstances the same or similar to those existing at the time and place in question."

At the conclusion of the general charge, defendant

requested the court to charge that ''if the defendant was proceeding lawfully, with a green light, he had a right to proceed through the intersection until such time as it became apparent the driver of the car in which the plaintiff was riding was going to enter said intersection.''

Since no part of the city ordinance relating to green or go lights was introduced in evidence, Section 6307-13 (a), General Code, is applicable and reads in part as follows:

''(a) Green alone or 'go.' * * *

''2. All other traffic facing the signal * * * may proceed straight through * * *. But such traffic shall yield the right of way to vehicles * * * lawfully within the intersection * * * at the time such signal is exhibited.''

Although there is no express statutory duty imposed upon the court to give instructions after the general charge, under the practice a party has the right at the conclusion of the general charge to request instructions on any material issue not covered in charges previously given. *Union Central Life Ins. Co.* v. *Hoyer*, 66 Ohio St., 344, 64 N. E., 435; *Cleveland Punch & Shear Works Co.* v. *Consumers Carbon Co.*, 75 Ohio St., 153, 169, 78 N. E., 1009. It was defendant's contention, supported by evidence, that he was driving at a prima facie lawful speed and entered the intersection on the green light. It was plaintiff's contention, supported by her evidence, that her car entered the intersection on the green light which changed to yellow as her car reached the center of the intersection, although the driver of her car stated the light changed from green to yellow when he reached the easterly crosswalk.

A person entering an intersection with a green light in his favor is subject to the provisions of Section 6307-21, General Code, with respect to speed, but the

fact that he may have had the green light is an important element in determining whether he was negligent and also whether the proximate cause of a passenger's injury was the negligence of the driver or that of another.

A requested instruction before argument must be in writing and must be literally correct in the form presented. But under the practice, requests for additional instructions after the general charge has been given may be made orally. Such a request is proper if it is sufficient to call the court's attention to a material omission in the charge or charges previously given. It is error to refuse a requested instruction in a proper case. *Whitaker, Admr.,* v. *Michigan Mutual Life Ins. Co.,* 77 Ohio St., 518, 522, 83 N. E., 899. The request presented in the instant case may not have been literally correct, but it was sufficient to require the court to charge upon the subject requested.

We find no other error assigned prejudicial to defendant, but for refusal to charge on the subject requested, the judgment is reversed and the cause remanded for new trial.

*Judgment reversed and cause remanded.*

CONN and CARPENTER, JJ., concur.