SPRINGSTEEL, PLAINTIFF-APPELLEE, *v.* JONES & LAUGHLIN STEEL CORPORATION, DEFENDANT-APPELLANT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25447.   Decided July 18, 1963.

418

*Messrs. Dudnik, Komito, Nurenberg, Plevin, Dempsey & Jacobson*, for plaintiff-appellee.

*Messrs. Bulkley & Butler, Mr. James A. Butler*, of counsel, for defendant-appellant.

J. J. P. Corrigan, J. This case is before this court on appeal on questions of law from a jury verdict of $135,000.00 and judgment entered thereon on November 3, 1960, in the Court of Common Pleas of Cuyahoga County against defendant, Jones & Laughlin Steel Corporation, and in favor of plaintiff, Glen R. Springsteel.

For the purposes of brevity and clarity, Glen R. Springsteel, plaintiff-appellee, will hereinafter be referred to as plaintiff and Jones & Laughlin Steel Corporation, defendant-appellant, will be referred to as defendant.

Defendant complains of error in the record and proceedings prejudicial to its rights in the following assignments:

"1. The trial court erred in overruling the motion of defendant for judgment in its favor or for a directed verdict made at the end of plaintiff's evidence.

"2. The trial court erred in overruling the motion of defendant for judgment in its favor or for a directed verdict made at the end of all the evidence.

"3. The trial court erred in overruling the motion of defendant for judgment in its favor notwithstanding the verdict of the jury or for a new trial.

"4. The jury verdict and court judgment entered thereon are manifestly against the weight of the evidence.

"5. The trial court erred in refusing to give to the jury before argument defendant's written requested instructions Nos. 3, 5, and 8.

"6. The trial court erred in its general charge to the jury to the prejudice of defendant.

"7. There were other errors apparent on the face of the record."

The evidence discloses that defendant entered into a prime contract with Dingle-Clark Company for the renovation and modernization of certain open hearth furnaces. Dingle-Clark subcontracted with A. S. Johnson Company to do part of this work, including the digging of a trench on defendant's premises for the installation therein of certain underground conduits for electric wires.

A. S. Johnson Company brought its own equipment and employees for the digging job. They were supervised by A. S. Johnson, President of the subcontracting firm. Plaintiff was one of these employees and a certain Mike Rosul, another. One piece of the Johnson equipment on defendant's premises was what is known as a Lima backhoe. Mike Rosul was the operator of this and plaintiff was his assistant and oiler.

The trench was to be dug in a general northerly and southerly direction. It was to be approximately eight feet wide and approximately eight feet deep. The excavation paralleled a private roadway on defendant's property to the west of that roadway. The easterly edge of the excavation was five to ten feet from the roadway. This roadway was to be kept open for traffic during the excavation process. From eight to fifteen feet, as variously testified, west of the westerly edge of the trench there was an overhead lighting system consisting of a row of vertical light poles, spaced from one hundred to one hundred fifty feet apart, and strung along these poles were two No. 10 gauge electric wires to conduct electricity. These poles supported lighting fixtures for illuminating the area. The poles were constructed of steel pipe in three sections, each of which was of a smaller diameter than the section immediately beneath it. These sections were joined by a device known as a reducer coupling. The section of pipe closest to the ground was six feet six inches long by four and one-half inches in diameter. The middle section was described as ten feet long by three and one-half inches in diameter. The top section was described as being like an inverted "U," twelve feet in length by two and one-quarter inches in diameter. The light was suspended from the free end of the inverted "U." The wires were attached to a spool type insulator which in turn was secured to a horizontal crossarm on the inverted "U" at about

midpoint. The point on the light poles where the wires attached to the insulators was approximately twenty-two feet above ground level with about five feet of sag midpoint between poles.

Plaintiff's duties in connection with the operation of the Lima back hoe included starting the motor in the morning and seeing that it was properly oiled, greased and fueled. Then Mike Rosul would take charge of the piece of equipment and after that plaintiff's job was to check grade and depth of the excavation by using a grade pole and putting it down in the ditch to measure depth. Plaintiff's duties also included acting as safety man on the rig; one of his duties was to watch the rig to see that it did not get into the wires and also to warn the operator if he was getting close to an obstacle.

The back hoe is so designed that the operator faces the boom and bucket. The bucket moves back toward the operator as it digs and takes on a load. As the boom moves from side to side, the cab turns with the boom and bucket, thereby keeping these parts of the equipment in the view of the operator at all times. The back hoe moves backwards on treads. In this instance the equipment straddled the trench being dug, one set of treads being on the west side of the trench and the other set positioned on the east side of the trench. Constructed on top of these treads is a platform, and built up from the platform on the left side of the platform as you face the boom and dipper stick and bucket is a cab which houses the machinery, the levers and the other devices necessary to operate the piece of equipment, with a seat for the operator in the cab. To the right of the cab on the platform there is built up a pair of connected vertical beams with cross members about twice the height of the cab. At the top of this structure are accommodated certain grooved wheels or sheaves over which the steel cables run from the drum and motor at the rear right of the cab to the sheave block at the forward part of the boom which in turn operates the dipper and dipper stick attached to the forward end of the boom and does the digging when the machine is being operated. The cables are three-quarters inch in diameter and move at about fifteen hundred revolutions per minute when in operation. The boom is a heavy steel beam built out from the platform and extending in front of the cab and operator. The dipper and dipper stick are hinged to the forward end of the boom and

another set of steel cables is attached to the sides of the dipper and runs back to the cab and motor over a second set of grooved wheels that are attached to the sides of the boom. The back hoe moves backwards on its treads and digs with the dipper backwards like a crab, the operator lowering the boom and drawing the dipper as it digs towards the cab by means of mechanically controlling the sets of steel cables.

When the dipper is filled and folded under the boom, the operator causes the boom to be raised and turned to the right or left of the ditch and then casts the load by unfolding the dipper through the cable controls while the boom is moving. When the dipper is fully loaded, it carries a yard and a half of material and weighs a ton or a little less. On the day of the accident the loads were being cast to the west of the trench. This is known as the operator's blind side. When he would swing his boom to his right or the west side of the trench, he could see the wires but not at all times. He needed the oiler there to watch him so when his boom was in a certain position he would not swing into the wires.

On April 30, 1956, when the accident, which is the subject of this lawsuit, occurred, the back hoe was about seventy-five feet from the lamp post to the west and in front of it. In raising the boom to unload to the west of the trench, Mike Rosul, the operator, contacted the wires, strung overhead and attached to the light pole, ten to fifteen times, deliberately and intentionally, with the cables which were attached to the dipper sheaves. Finally, Rosul was raising up the wires as he emptied the dipper and as he dropped the wires then he noticed that the wires bridged over the cables above his boom, and following the wires with his eyes, he noticed the upper section of the light pole down on the ground attached to the electric wires. The length of wire between its attachment to the pole and where it touched the back hoe was sixty to seventy feet. The end of the pole that broke off was touching the ground at about a thirty degree angle or a little more. It was hanging on the wires. As soon as Rosul followed the pole down with his eyes, he saw the plaintiff lying on the ground about a foot away from the bottom end of the broken pole. Rosul then raised up his boom on the wires and pulled the pole away to the west of where plaintiff was lying.

There is considerable conflicting testimony as to the alleged rusting and distintegration of the pole at the point where it fractured. Rosul testified that he looked at the broken section after the accident and that it was just ''rotted completely'' at the point where it broke off. A witness for plaintiff, Michael Millie, also testified that he saw the light pole right after it broke and that it was rusted through at the coupling. There are some physical exhibits in the evidence alleged to be the sections of the light pole at the point above and below the lowest reducer coupling where the fracture occurred. There was other testimony that there was no rusting at the point of fracture but the break showed only clean gray steel. The broken section of the pole apparently was swung to the east, suspended on the electric wires which were draped over the cables above the boom, with the movement of the boom after unloading. Plaintiff was seriously injured.

The record also contains evidence that Rosul appreciated that when he was contacting the wires with some part of his rig there might be some danger.

Two of the defendant's exhibits, D 1 and D 2, are respectively, a certification of instructions in safety to outside contractors and a copy of the safety rules governing employees of outside contractors working in any part of the Cleveland steel works of the Jones & Laughlin Steel Corporation. The first is signed by A. S. Johnson, President of the subcontracting firm, and certifies that he has been instructed in the prevailing company safety rules and of the necessary safety precautions and practices pertinent to the work on this particular contract. Rule 10 of defendant's exhibit 2 reads as follows:

''10. Keep away from all electric wires and cables. A representative of our Maintenance Department must be advised before work is started on or near power lines.''

This exhibit is also signed by A. S. Johnson Company, indicating knowledge of such rules.

Petition alleges three specifications of negligence, namely:

1. Defendant failed to maintain the steel pole in reasonably safe condition under the circumstances.

2. Defendant failed to warn plaintiff that the lamp post was in a defective condition although defendant knew or should have known that such was the case.

3. Defendant invited plaintiff to work on its premises when it knew or should have known that it was dangerous to plaintiff.

We will consider the first three assignments of error together. Upon a careful consideration of all of the evidence in the light of the applicable principles of law we are of the opinion that this case was correctly a case for submission to the jury under a proper charge.

It was the duty of the defendant to have constructed and maintained light poles sufficiently strong to withstand the ordinary strain of weather and use for the purpose erected and any other tests of strength likely to be encountered in connection with the operation of its plant and premises. It was bound to exercise ordinary care to keep its light poles in a reasonably safe condition so as not to expose invitees and other persons to any unreasonable risk of harm. The extent of this latter duty is measured by the standard of foreseeability of injury to the eyes of a reasonably prudent man having regard for the accompanying circumstances. If the jury could find from the credible evidence that the pole was in such an advanced state of deterioration that it could be caused to fall by some force to which it might be subjected, or that it might even be on the verge of falling of its own weight in view of the evidence, and that the defendant knew or should have known of such condition and that reasonable precautions were not taken, then whether the test of ordinary care was met by defendant is, of course, an issue for the triers of fact. And they are the sole judges of the credibility of the witnesses.

Defendant contends that, as a matter of law, such negligence of which it may have been guilty, if any, could not have been the proximate cause of plaintiff's injuries. The rust-weakened light pole, if the jury so found it to be, furnished only the condition upon which the unforeseeable, intervening act of Mike Rosul, in operating his Lima back hoe, operated independently to cause the harm. However, it is well settled that proximate causation is not always arrested by the intervention of an independent force. If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate concurring cause for which full liability may

be imposed. Further, the law does not inevitably require that in order to prevent an intervening act from being a superseding cause which will relieve the defendant of responsibility for its negligence, that the precise act be foreseeable. The fact that neither party could reasonably anticipate the occurrence of the other concurrent cause will not shield a party from liability so long as his own negligence was one of the causes of the injury. This principle is recognized in Restatement of the Law of Torts, 1948 Supplement, Section 435:

"If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable."

See: *Carroll* v. *Central Counties Gas Co.*, 74 Cal. App., 303, 240 P., 43; *Kosmas* v. *Portland Cement Co.*, 6th Circuit, 64 Fed. (2d), 193; *Mummaw* v. *Southwestern Telegraph & Telephone Co.*, Mo. App., 208 S. W., 476; *Dalton* v. *Great Atlantic & Pacific Tea Co.*, 241 Mass., 400, 135 N. E., 318.

From these and many other cases, it may not be safely assumed that the unforeseeability of the intervening agency is always a reliable criterion of nonliability.

So, whether an intervening act is a concurrent cause or a superseding cause of injury presents a question of fact for the triers of fact, the jury. If the triers of the facts in this case were to find that a light pole carefully maintained in sound condition would have broken, under the contact of the back hoe with the wires attached to the pole, and that plaintiff's injuries would thus have been sustained even though defendant had not been negligent, the defendant's conduct would not be a substantial factor in bringing about the harm to plaintiff. See Restatement of Law of Torts, Section 432, subd. (1). On the other hand, if they found that a sound pole would not have so broken, and that harm to plaintiff would have been prevented by careful maintenance, then defendant's omission can be a substantial concurring cause.

Accordingly, it was a proper question to submit to the jury as to whether the light pole would have broken from the contact of the back hoe with the wires under the circumstances of this case, if such light pole had been reasonably sound throughout.

Likewise, the question as to reasonable foreseeability and the intervening proximate causality of the contact of the Lima back hoe and the wires strung to the light pole, under the circumstances, and plaintiff's injuries, is one upon which reasonable minds might differ, and was a question for submission to the jury in this case.

The next assignment of error, No. 4, urges that the verdict and judgment are manifestly against the weight of the evidence and, after a careful reading of the bill of exceptions and a consideration of all the evidence, we do not so find.

Assignment of Error No. 5 is concerned with the refusal of the trial court to give to the jury before argument defendant's written requested instructions Nos. 3, 5, and 8.

Defendant's request No. 3 reads as follows:

"It is the law of Ohio that a defendant is liable only for his negligence which directly and proximately causes or contributes to cause an injury. If you find from a preponderance of the evidence that defendant was negligent in failing to warn plaintiff of a dangerous or defective condition of the lamp post which broke, and you further find by a preponderance of the evidence that said lamp post broke because of a new and independent act of a third party, in causing or permitting a part of the back hoe to come in contact with said lamp post or a wire attached to said lamp post, and you further find by a preponderance of the evidence that said post would not have broken and caused injury to plaintiff without such contact by the back hoe, then your verdict must be for defendant Jones & Laughlin Steel Corporation."

The trial court correctly refused to give this charge because it does not correctly distinguish between an efficient intervening act of a third party breaking the chain of causation and cases where the concurrence of the intervening act together with any original act of negligence of defendant proximately causes the injury to plaintiff.

The general rule is that where there intervenes between an agency creating a hazard and an injury resulting from such hazard another conscious and responsible agency which could or should have eliminated the hazard, the original agency is relieved from liability. A break in the chain of causation thereby takes place which operates to absolve the original agency

from any liability. *Thrash* v. *U-Drive-It Co.*, 158 Ohio St., 465.

However, as was stated by Judge Allen in *Monse* v. *Central Savings & Trust Co.*, 120 Ohio St., 599, 167 N. E., 868, at page 605:

"It is universally agreed that the mere fact that the intervention of a responsible human being can be traced between the defendant's wrongful act and the injury complained of will not absolve him. On the contrary, the general rule is that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongdoer, or was in reality only a condition on or through which the negligent act operated to produce the injurious results. * * *"

The rule seems to be that whether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone. *Mudrich* v. *Standard Oil Co.*, 153 Ohio St., 31.

The rule is also stated in 38 American Jurisprudence, 730:

"There is a numerous class of cases in which a person by his negligence produces a dangerous condition of things, which does not become active for mischief until another person has operated on it by the commission of another negligent act, which might not unreasonably be anticipated to occur. The original act of negligence is then regarded as the proximate cause."

The defendant's requested instruction No. 3 does not deal adequately with this area of the law and was misleading. Thus, it was properly refused by the trial court. The requested charge, if allowed, would have instructed the jury that the mere finding by it that Mike Rosul had in any way contributed to the breaking of the lamp post would, in and of itself, absolve the defendant from any liability. The requested charge made no reference to defendant's negligence, or whether Mike Rosul's alleged negligence was foreseeable by the defendant or whether it in fact broke the chain of causation from defendant's negligence to plaintiff's injury. See also:

*Centrello* v. *Basky*, 164 Ohio St., 41, 128 N. E. (2d), 80 (1955), para. 5 of syllabus; *Mudrich* v. *Standard Oil Co.*, 153 Ohio St., 31, 90 N. E. (2d), 859 (1959); *Szabo* v. *Tabor Ice Cream*, 37 Ohio App., 42, 174 N. E., 18 (1930); *Matz* v. *Akron*, 22 Ohio App., 98, 153 N. E., 868 (1926); *Mitchell* v. *Great Eastern*, 60 Ohio App., 144, 19 N. E. (2d), 910 (1938); *DeEgidio* v. *Contact Carrier Corp.*, 162 N. E. (2d), 163 (1959).

Defendant next claims error on the part of the trial court for its refusal to give request No. 5 which reads as follows:

"It is the law of Ohio that the owner of premises upon which construction work is to be performed by an independent contractor is under no duty to foresee that an employee of such contractor would be negligent.

"And so if you find by a preponderance of the evidence that an employee of A. S. Johnson Company was negligent, and that such negligence directly and proximately caused plaintiff's injury, which would not have occurred except for such negligence, then in that event defendant was under no duty to foresee such negligence by an employee of A. S. Johnson Company and your verdict must be for defendant Jones & Laughlin Steel Corporation."

The court was correct in refusing to give requested charge No. 5 because the charge as tendered negates the basic rule of law that a defendant may be held liable for his negligence albeit the result was not caused by his sole negligence but by concurrence with the negligence of another. Thus this charge overlooked the question of concurrent negligence on the part of Mike Rosul and the defendant.

Finally, as to request No. 8 submitted by defendant and refused by the trial court. It reads:

"It is the law of Ohio that the owner of premises on which work is being performed by a contractor or subcontractor has a duty to maintain the premises in a reasonably safe condition for use, this duty not extending however, to any inherent hazards necessarily present because of the character of the work to be done.

"And so if you find by a preponderance of the evidence that the premises of Jones & Laughlin Steel Corporation were in a reasonably safe condition for use Jones & Laughlin would not have a duty with respect to any inherent hazards necessarily

present because of the character of the work to be done by an independent contractor or sub-contractor.''

We do not feel that this charge, as requested, is a correct statement of a principle applicable to the established facts in this case. The character of work being performed had no connection at all with the defendant's lamp post. Under the facts of this case, the hazard of having a lamp post break and injuring someone is not the type of inherent hazard referred to in *Wellman* v. *East Ohio Gas Co.*, 160 Ohio St., 103, cited by defendant. The type of hazard contemplated in the *Wellman* case is that hazard which is inherent in the performance of the work itself on the job to be performed. Thus, this requested charge was properly refused by the trial court.

As Assignment of Error No. 6, defendant claims error in the general charge of the trial court to the prejudice of the defendant. The general charge of the trial court is impeccably correct as far as it goes. Particularly, with regard to proximate cause, the court charged:

''In order that negligence may be a ground of recovery for injury, it must further appear from the evidence that the negligence complained of was a proximate cause or direct cause of such injury, that is, that the negligent act or condition and the injury must stand in the immediate relation of cause and effect.

''A proximate cause, in other words, is that cause which directly produces an injury, and without which the injury would not have occurred.

''Therefore you will determine by a preponderance of the evidence whether the defendant's negligence, if any, was a proximate cause of the plaintiff's injuries.

''Should you find from the evidence that the negligence of the defendant was not a proximate cause of the plaintiff's injury, your verdict will be for the defendant. Should you find, however, that the negligence of the defendant, if any, was a proximate cause of the plaintiff's injuries, you will then proceed to a consideration of the question of contributory negligence.''

This is a crystal clear, succinct statement of proximate cause, alone. However, counsel for the defendant, when asked by the court, at the point where the charge in chief was com-

pleted, if there was anything further by way of addition to or subtraction from the charge as given, made the request that the court instruct the jury that if it should find that the plaintiff's injury was due to the negligence of a third person, then in that event defendant would not be responsible for such negligence. This request was refused by the court. Upon excepting to this refusal to charge after argument, counsel was advised by the court as follows:

"The court wishes to make this statement, that in the opinion of the court that was thoroughly covered by the multitudinous number of special requests to charge. At least to some degree the instruction was contained in the court's general charge. I feel between the court's general charge and the special requests to charge, the request of counsel has been thoroughly covered in the instructions to the jury, and for me to give that request at this time would only accentuate that particular phase of the charge and would be repetitious."

In view of the state of the evidence with regard to the participation of Mike Rosul, the operator of the Lima back hoe, in the events culminating in the accident and injuries to plaintiff, this court cannot but conclude that defense counsel's request was perfectly proper and should have been granted by the trial court. The question of whether the damage to plaintiff was not caused by any act of defendant but resulted from the independent, wrongful act of a third person not a party to the action, was not covered in the general charge of the court and was not covered in any of the special requests to charge before argument.

Counsel's request was sufficient to challenge the court's attention to the particular issue of the sole negligence or otherwise of Mike Rosul, although the request is not strictly specific in this regard. An oral request for additional instructions after the general charge must be given if the language of such request is sufficient to call the court's attention to a material omission in instructions previously given, and its refusal in a proper case constitutes prejudicial error.

Counsel's request invited the attention of the court to a highly controversial factual question in the case and called the court's attention to the right of the defendant to have the jury charged as to its liability under circumstances, if they should

so find, of the sole negligence of a third person. See *Casanova* v. *Wagner*, 85 Ohio App., 278, 88 N. E. (2d), 312 and *Lytle* v. *Penna. Rd. Co.*, 91 Ohio App., 232, 108 N. E. (2d), 72.

The evidence did pose this question and the jury should have been instructed on this specific point. The failure to so charge was prejudicially erroneous to the defendant. See 4 Ohio Jurisprudence (2d), 240, and cases cited under footnote 15, including *Baltimore & Ohio Railroad Company* v. *Lockwood*, 72 Ohio St., 586, 74 N. E., 1071; *Telinde* v. *Ohio Traction Co.*, 109 Ohio St., 125, 141 N. E., 673; *Rhoades* v. *City of Cleveland*, 157 Ohio St., 107, 105 N. E. (2d), 2.

In connection with the acts of Mike Rosul, hereinbefore referred to, as reflected by the evidence, it is further the view of this court that the trial court should have charged the jury on joint and concurrent negligence, on remote cause, on intervening cause, and on foreseeability, all as being pertinent principles of law governing the situation thus developed. The essential thing in such a situation, with regard to the charge of the court, is that the jury must not be allowed to gain an erroneous conception of the law governing the facts as developed by the evidence. See *Rayland Coal Co.* v. *McFadden, Adm.*, 90 Ohio St., 183, 107 N. E., 335.

We find no other errors apparent on the face of the record as suggested in assignment No. 7.

For the reasons stated above, in connection with our consideration of Assignment of Error No. 6, the judgment of the court below is reversed and the cause is remanded for further proceedings according to law.

SILBERT, J., concurs.

KOVACHY, P. J., concurs in part and dissents in part to the judgment.

KOVACHY, P. J., dissenting. I dissent to that part of the judgment of the majority which remands the cause for further proceedings because, in my opinion, the trial court erred to the prejudice of the defendant in overruling defendant's motion for judgment in its favor, or in the alternative, for a directed verdict in its favor made at the close of all the evidence, and as a

consequence, this court ought to do what the trial court should have done and render final judgment for the defendant.

The A. S. Johnson Company, under the facts, was a business invitee on the defendant's premises for the purpose of digging a trench. The understanding between the A. S. Johnson Company and the defendant, however, was that the Johnson Company was to use only such part of defendant's premises as was necessary to do the work undertaken and that the Johnson Company, under no circumstances, was to contact the wires or the poles which were used for lighting the premises and which were very important facilities for night operations conducted by the defendant.

There can be no mistake over the fact that the Johnson Company understood that it was not to come in contact with or disturb the wires and poles when working on defendant's premises because Mr. Johnson, the President, was given instructions to that effect by the Assistant Safety Engineer and the Supervising Project Engineer when the premises were inspected by them two or three months before the commencement of the work. In addition, Johnson also attended a safety meeting where the same warning was given to him and on that occasion he signed a set of written safety rules, including No. 10 which read as follows:

"Keep away from all electric wires and cables. A representative of our Maintenance Department must be advised before work is started on or near power lines."

Moreover, at the time of the inspection tour with the Assistant Safety Engineer and the Supervisory Project Engineer, the question arose as to whether the light poles should be temporarily removed, and upon assurance by Johnson that his work could be done without interference with the wires or poles, the idea was abandoned.

Despite all of the safeguards employed by the defendant in warning the Johnson Company of the hazard of contacting the wires in any manner whatever, Rosul, the back hoe operator, on the day of the accident, brought the cables which run over the boom into contact with the wires, raised the wires as high as they would go without tension (the sag of the wires was five feet in the middle), and then dropped the boom in a fraction of a second to cast the dirt from the bucket. He did this ten to

fifteen times to the same section of the wires until one of the poles to which the wires were attached broke. Plaintiff's expert testified that this action caused a whipping of the wires which transmitted a dynamic force of about 150 foot pounds to the pole which broke and that such a force accumulates on a pole that is deteriorating or corroding at the point of deterioration or corrosion. While said expert stated that such dynamic force, combined with the normal static force present in an erected pole, would not be sufficient to cause harm to an iron pole in good condition, it is crystal clear from all the circumstances in this case that had the pole not been subjected to this whipping action, the accident would not have taken place and the plaintiff would not have been injured.

The plaintiff, as an employee of the Johnson Company, had no different status than had the company for which he worked. Whatever status the Johnson Company had, he had, and whatever duties or obligations the defendant owed to the Johnson Company were likewise owed to him. The invitation to the Johnson Company was co-extensive with the use of so much of the defendant's premises as was reasonably necessary to operate the back-hoe without interference with the wires of the lighting system. The whipping action on the wires caused by operator Rosul was not something incidental or accidental to the conductance of the work. It was ''deliberate and intentional,'' as testified to by Rosul and was continuous and drastic for a period of hours. Such contacts consequently were a *deliberate* violation of the rules of safety solemnly acceded to by the Johnson Company and were an *intentional* creation of a peril which the Johnson Company had been specifically warned against.

It seems obvious to me, therefore, that contacting the wires in the manner described was not co-extensive with the defendant's invitation and exceeded the limits of the invitation. The defendant's duty to an invitee was to use ordinary care to provide a reasonably safe place for him to do his work. When an invitee carries on his work outside the limits of the invitation, contrary to the express instructions of the owner of the premises, the duty to exercise ordinary care to provide a reasonably safe place for him to work ceases, and the only obliga-

tion then resting upon the owner of the premises is to refrain from wanton and wilful injury to him.

In 38 American Jurisprudence, 762, Negligence, Section 101, the following is stated:

"The duty owed by an owner or occupant of premises to an invitee for his safety is measured and limited by the nature of the invitation held out. His liability is only co-extensive with the invitation; and to entitle a person to recover for injuries on the basis of a duty owed to him as an invitee, he must show that at the time of injury he was using the premises for a purpose contemplated by the invitation. If an invitation by a contractor to employees of a subcontractor to use a scaffold erected by him can be implied, it is restricted to such use as is reasonably necessary and is not extended to usues not contemplated or reasonably to be expected, though apparently convenient."

In the case of *Pettyjohn & Sons* v. *Basham*, 126 Va., 72, paragraph six of the syllabus reads:

"The duties of an occupant of land to an invitee are entirely different from his duties towards licensees or trespassers. The invitee comes by invitation, express or implied, and may reasonably expect to come with safety. The invitation, however, is rarely, if ever, unlimited, and especially when implied, but to the extent of the invitation the occupant owes to the invitee the duty of provision, preparation and lookout. He must use ordinary care to see that his premises are in a reasonably safe condition for the use of the invitee in the manner, and to the extent, that he has invited their use."

And in the case of *Ryerson* v. *Bathgate*, 67 N. J. Law, 337, it is stated in the syllabus:

"Where the owner or occupier of lands, by express invitation, induces a person to make use of a portion of the premises for an expressed purpose, his liability is confined within the limits of the invitation and does not extend to injuries received by the person invited while using the premises for a purpose not expressed and not authorized by the invitation."

Also in the case of *Gavin* v. *O'Connor*, 99 N. J. Law, 162, paragraph one of the syllabus reads:

"The liability of the owner or occupier of premises who expressly or impliedly invites others to enter thereon is only co-extensive with his invitation; his duty of care is limited by

that, and when the limits of the invitation are exceeded such duty ceases except as to abstaining from acts willfully injurious.''

See *Drake* v. *City of East Cleveland*, 101 Ohio St., 111, 127 N. E., 469.

Moreover, even accepting the majority's theory that the Johnson Company was an invitee on the premises throughout these events and that the pole was corroded and that the defendant was negligent in its maintenance, nevertheless, in my opinion, the plaintiff has failed to establish a case against the defendant for the reason that under the undisputed facts, the defendant could not have reasonably foreseen or anticipated that its negligence would result in an accident caused by an act of the Johnson Company deliberately and intentionally violating defendant's specific instructions and written safety rules not to contact the wires. As a consequence, the negligence of the defendant constituted a remote rather than a proximate cause since the accident was primarily caused by the intervention of an efficient independent force breaking the causal connection of defendant's negligence.

It is stated in 39 Ohio Jurisprudence (2d), 532, Negligence, Sec. 30, that:

''In contemplation of law an injury that could not have been foreseen or reasonably anticipated as a probable result of an action in negligence is not actionable.''

In *Kelly* v. *Catholic Daughters of America*, 19 Ohio Law Abs., 157, paragraph two of the headnote reads:

''An owner of real estate is not bound to make it safe for any purpose for which he could not reasonably anticipate it would be used, or for use in a manner for which it was obviously never designed.''

From the above it seems manifest to me that the plaintiff has totally failed to make out a case against this defendant under the facts and the law applicable thereto and that the defendant should not be required to withstand another trial with the facts and the law so patently on its side.