**SIGMAN, Admr., Appellant,**

v.

**GENERAL ELECTRIC COMPANY, Appellee, et al.**

[Cite as *Sigman v. Gen. Elec. Co.* (1991), 77 Ohio App.3d 430.]

Court of Appeals of Ohio,
Allen County.

No. 1–90–112.

Decided Sept. 30, 1991.

*Timothy A. Shimko,* for appellant.

*Edward R. Goldman* and *Peter L. Ney,* for appellee.

---

THOMAS F. BRYANT, Presiding Judge.

This is an appeal by plaintiff-appellant, Rita J. Sigman, Administrator of Charles Sigman's Estate ("plaintiff"), from a judgment of the Court of Common Pleas of Allen County entered on November 16, 1990, granting summary judgment for defendant-appellee, General Electric Company ("G.E.") and dismissing plaintiff's complaint.

On September 1, 1984, a motor vehicle collided with and broke a rural utility pole belonging to Ohio Power Company, downing and damaging the electric power line carried by the pole and causing a disruption of electricity serving the area. Plaintiff's decedent, Charles D. Sigman, ("Sigman") an Ohio Power Company lineman, was dispatched to the scene to repair the power line. While attempting to repair the damaged line, Sigman was electrocuted and died.

Later investigation of the events surrounding Sigman's death revealed that a safety device in the downed power line, a fuse with a cut-out device in the fuse holder, had malfunctioned, permitting the line to reenergize while Sigman was in contact with it. There were no witnesses to the event. Evidence at the scene suggested that Sigman did not use all the safety equipment available to him nor did he take all the safety precautions thought by other linemen to have been known by him.

Plaintiff commenced this products liability action claiming her decedent's death was proximately caused by the defective G.E. fuse holder safety device proceeding on theories of recovery in strict liability, negligence, and breach of warranty.

Eventually, the trial court granted G.E.'s motion for summary judgment dismissing all plaintiff's claims, stating, "the proximate cause of decedent's demise was his own deliberate assumption of a risk which he had been warned of" and "as a matter of law that the decedent's negligence was greater than the negligence, if any, of General Electric."

From that judgment Sigman now appeals and assigns error.

In the interests of brevity and for clarity of analysis, we will address appellant's assignments of error together.

Appellant's assignments of error are:

"I. The trial court erred in granting summary judgment in favor of appellee General Electric Company as genuine issues of material fact existed and reasonable minds could come to more than one conclusion.

"II. The court's ruling against appellant granting appellee General Electric Company summary judgment grounded on the conclusion that as a matter of law the appellant's decedent's conduct amounted to assumption of the risk, intervening between the defect alleged and the injury received is error where the presumption that decedent exercised due care creates a disputed issue of material fact and an issue of fact remains as to the proximate cause of decedent's death.

"III. The court's ruling against appellant granting appellee General Electric Company summary judgment was error as the record demonstrated genuine issues of material fact with respect to appellant's claim of negligence and breach of express/implied warranties."

A trial court may properly grant a motion for summary judgment pursuant to Civ.R. 56 only when, upon construing the evidence most strongly in favor of the non-movant, no genuine issues of material fact exist and reasonable minds can reach only a conclusion adverse to the non-moving party.

Plaintiff contends that the trial court improperly granted G.E.'s motion for summary judgment because there are genuine issues of material fact yet to be resolved, permitting reasonable minds to reach more than one conclusion about whether or not Sigman assumed the risk of electrocution and death or in this way or some other way proximately caused his own electrocution and death.

Sigman died working on his employer's power line in the course of his employment duties as a lineman. In the recent case of *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145, 566 N.E.2d 1203, the syllabus states:

"An employee does not voluntarily or unreasonably assume the risk of injury which occurs in the course of his or her employment when that risk must be encountered in the normal performance of his or her required job duties and responsibilities."

■ The foregoing affirms the judgment of this court holding assumption of the risk by an injured employee to be no defense for the manufacturer in a products liability case brought by the employee for recovery for injuries claimed to have been proximately caused by a defective product used in the performance of the employee's required job duties, even in the case of inherently dangerous job duties. *Cremeans v. Willmar Henderson Mfg. Co.* (Aug. 22, 1989), Union App. No. 14–88–5, unreported, 1989 WL 98426. Thereafter, in *Ball v. M.R. Philpot Masonry Co., Inc.* (Apr. 10, 1991), Shelby App. No. 17–90–4, unreported, 1991 WL 53691, we held that " * * * *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145 [566 N.E.2d 1203] is clearly the controlling authority as to the application of assumption of the risk in the workplace."

Addressing the issue of a products liability claim based upon negligence in the employment context, the Supreme Court in *Cremeans, supra,* at 151, 566 N.E.2d at 1209, said:

"In *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780, * * * we held that '[t]he defense of assumption of the risk is merged with the defense of contributory negligence under R.C. 2315.19.'

"Therefore, since the defense of assumption of the risk is unavailable in the case at bar, so too is the defense with which it has been merged and thus, R.C. 2315.19 is inapplicable to limit or bar Cremeans from recovery on his products liability claim based upon negligence."

■ G.E.'s strict liability or its liability for negligence are necessarily founded on the claim that its product, the fuse and holder, was defective. It seems to have been conceded that the fuse and holder were defective and that had it not been so, the electrical energy in the power line handled by Sigman would have been interrupted, preventing his electrocution. Thus, it seems further that any risk, if assumed by Sigman, was not that of being electrocut-

ed, but, rather, the risk that the G.E. safety device was defective and would fail in service to prevent that which it was intended to prevent. Therefore, the defective fuse and holder may be seen to have increased the risk normally inherent in Sigman's dangerous job duties, leaving the defenses of assumption of the risk and contributory negligence inapplicable to this products liability case arising in the course of Sigman's work in his workplace.

■ Finally, G.E. contends that the trial court was correct in finding that reasonable minds could reach only the conclusion that Sigman's failure to use safety devices and precautions was the sole proximate cause of his injuries and death. Ordinarily, the determination of proximate cause is a decision to be made solely by the trier of fact, as are the questions concerning intervening acts as concurrent or superseding causes of injury. *Cremeans, supra,* 57 Ohio St.3d at 151, 566 N.E.2d at 1209, and *Springsteel v. Jones & Laughlin Steel Corp.* (1963), 2 Ohio App.2d 353, 361, 26 O.O.2d 229, 233, 192 N.E.2d 81, 87.

Having determined that the defenses of assumption of the risk and contributory negligence are not available to G.E. on plaintiff's strict liability and negligence claims, the proximate causation of Sigman's injuries and death by failure of defective product or otherwise, is a jury question. Appellant's assignments of error are therefore well taken.

The judgment of the Court of Common Pleas of Allen County is reversed and the cause is remanded to that court for further proceedings.

*Judgment reversed*
*and cause remanded.*

HADLEY and EVANS, JJ., concur.