DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the decision of the Washington County Court of Common Pleas, which convicted Defendant-Appellant James O'Connell of involuntary manslaughter, a third-degree felony in violation of R.C. 2903.04(B).
 {¶ 2} Appellant presents two general arguments: (1) his counsel was ineffective; and (2) the trial court failed to make the findings required by R.C. 2929.14(B) when it sentenced appellant.
 {¶ 3} We find appellant's arguments lack merit, and we affirm the well-reasoned judgment of the trial court.
 I. Proceedings Below {¶ 4} The events giving rise to this appeal surround a physical altercation between Defendant-Appellant James O'Connell and James Dawson.
 {¶ 5} On November 21, 2000, the two men were in a bar in Marietta, Ohio. After disparaging remarks were exchanged relating to an alleged debt Dawson owed to O'Connell, the two men exited the bar. Once outside, O'Connell punched Dawson in the face and Dawson fell to the ground, landing on a concrete parking block. O'Connell then left the scene. In the early morning of November 22, 2000, Dawson took a taxicab home.
 {¶ 6} Four days later, on November 26, 2000, Dawson was found dead in his apartment. A coroner's investigation concluded that Dawson had died from a subdural hematoma, which was caused by blunt force injury to the head.[2]
 {¶ 7} Subsequently, O'Connell was indicted for one count of involuntary manslaughter, a third-degree felony in violation of R.C.2903.04(B), and a jury trial was had.
 {¶ 8} Myriad witnesses testified at the trial. The testimony of these witnesses will be visited infra, in light of O'Connell's spec ific legal arguments.
 {¶ 9} At the conclusion of the trial, the jury returned a guilty verdict. Following a sentencing hearing, O'Connell was sent enced to four-years incarceration.
 II. The Appeal {¶ 10} Appellant timely filed this appeal, assigning seven errors for our review.
 {¶ 11} First Assignment of Error: "James O'Connell was denied the effective assistance of counsel."
 {¶ 12} Second Assignment of Error: "James O'Connell was denied his state and federal constitutional rights to due process and a fair trial when the trial court allowed the admission of incompetent expert opinion evidence by the State's expert witness."
 {¶ 13} Third Assignment of Error: "James O'Connell was denied his state and federal constitutional rights to due process and a fair trial when the trial court entered a judgment of conviction against him for involuntary manslaughter in the absence of sufficient evidence to support the conviction."
 {¶ 14} Fourth Assignment of Error: "James O'Connell was denied his state and federal constitutional rights to due process and a fair trial when the trial court allowed the admission of prejudicial hearsay evidence through the State's expert witness."
 {¶ 15} Fifth Assignment of Error: "James O'Connell was denied his state and federal constitutional rights to due process and a fair trial when the trial court gave the jury improper `acquittal first' instructions and verdict forms."
 {¶ 16} Sixth Assignment of Error: "James O'Connell was denied his state and federal constitutional rights to due process and a fair trial when the trial court gave the jury a dictionary and allowed them to bring it into the jury room."
 {¶ 17} Seventh Assignment of Error: "The trial court erred when it sentenced James O'Connell to more than the minimum prison sanction without making the findings required by R.C. 2929.14(B), in violation of Mr. O'Connell's state and federal constitutional rights to due process and equal protection of the laws."
 {¶ 18} At the outset, we note that O'Connell's Second through Sixth Assignments of Error are being improperly raised for the first time on appeal. Ordinarily, absent a demonstration of plain error, we would decline to address such arguments. See State v. Jones (2001),91 Ohio St.3d 335, 744 N.E.2d 1163 (stating that a party must object in order for an issue to be preserved for appeal).
 {¶ 19} However, because O'Connell asserts in his First Assignment of Error that the failure to object to these supposed errors amounted to the ineffective assistance of counsel, we will address the merits of these arguments in this context.
 {¶ 20} Accordingly, we will address O'Connell's first six assignments of error together, and his Seventh Assignment of Error separately.
 A. Ineffective Assistance of Counsel {¶ 21} O'Connell argues in his first six assignments of error that his trial counsel was ineffective. We disagree.
 {¶ 22} The burden rests upon the appellant to demonstrate how counsel breached the duty to provide reasonable representation. See In reHannah (1995), 106 Ohio App.3d 766, 667 N.E.2d 76.
 {¶ 23} For an appellant to succeed on a claim of ineffective assistance of counsel, he must satisfy the elements of the two-pronged analysis set forth in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. See State v. Ballew, 76 Ohio St.3d 244, 1996-Ohio-81,667 N.E.2d 369, citing Strickland v. Washington, 466 U.S. at 668,104 S.Ct. 2052.
 {¶ 24} The Strickland test requires an appellant to prove, first, that his trial counsel was deficient, and, second, that this deficiency prejudiced his case. See State v. Sheppard, 91 Ohio St.3d 329,2001-Ohio-52, 744 N.E.2d 770, citing State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
 {¶ 25} Because of the difficulties inherent in determining whether a lawyer's performance was deficient in any given case, a strong presumption exists that a licensed attorney is competent, and that his conduct fell within the wide range of reasonable, professional assistance. See State v. Bradley, 42 Ohio St.3d at 142,538 N.E.2d at 380.
 {¶ 26} Here, O'Connell presents five arguments as to how his trial counsel's performance was ineffective: (1) failure to object to "the admission of incompetent expert opinion evidence by the State's expert witness"; (2) failure to object on the basis that there was insufficient evidence for the case to be submitted to the jury; (3) failure to object to "the admission of prejudicial hearsay evidence through the State's expert witness"; (4) failure to object to "improper `acquittal first' instructions and verdict forms" that were given to the jury; and (5) failure to object to the "trial court [giving] the jury a dictionary and allow[ing] them to bring it into the jury room."
 1. Incompetent Expert Opinion and Insufficient Evidence {¶ 27} We find that O'Connell's argument that the state's expert testimony was "incompetent," and O'Connell's insufficient-evidence argument, are essentially the same.[3] Accordingly, we will address them together.
 {¶ 28} When an appellant challenges the sufficiency of evidence, the relevant inquiry is "whether, `after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis sic.) State v. Johnson (2000), 88 Ohio St.3d 95, 112,723 N.E.2d 1054, quoting Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781; see State v. Green (1996), 117 Ohio App.3d 644,691 N.E.2d 316; Whiteside, Ohio Appellate Practice (2001 Ed.) 287-291, Standards of Review.
 {¶ 29} Here, O'Connell maintains that there was insufficient evidence introduced to support causation. Specifically, O'Connell argues that the assessment of the cause of Dawson's fatal subdural hematoma by Dr. Randall Uptegrove, a deputy coroner from Montgomery County, was too vague to support a finding of causation. In support of this contention, O'Connell points to the following colloquy between Dr. Uptegrove and O'Connell's trial counsel.
 {¶ 30} O'Connell's counsel: "Are you able to say what the nature of the blunt force trauma is? In other words, can you say, that was a punch, that was a ball bat * * *?"
 {¶ 31} Dr. Uptegrove: "No, ma'am. I can't."
 {¶ 32} O'Connell's counsel: "All right. So you don't have a medical opinion as to whether or not this resulted from being hit or falling * * *."
 {¶ 33} Dr. Uptegrove: "That's right. There's no pattern injury on the outside of the body, so it could be any of those things."
 {¶ 34} From this exchange, O'Connell maintains that, "[this] testimony * * * is completely speculative and indefinite. It amounts to guesswork and should have been excluded. Without it, the State cannot connect * * * Dawson's death to * * * O'Connell's action beyond a reasonable doubt."
 {¶ 35} We see no reason to address this argument in any detail because we find adequate evidence in addition to this challenged testimony to support the issue of causation, which was an issue properly decided by the jury. See, generally, Cremeans v. Willmar Henderson Mfg.Co. (1991), 57 Ohio St.3d 145, 566 N.E.2d 1203; Sigman v. Gen. Elec. Co. (1991), 77 Ohio App.3d 430, 602 N.E.2d 711.
 {¶ 36} There were numerous eyewitnesses to the fight at the bar who testified at trial. There were also eyewitnesses who testified that, as a result of the fight, Dawson was visibly injured and his nose was cut and badly bleeding.
 {¶ 37} Other eyewitnesses testified that Dawson then left the bar and went to another bar. There, eyewitnesses testified that he was visibly injured and his nose was cut and still bleeding. Two bartenders working that night testified that Dawson did not appear to be intoxicated.
 {¶ 38} A taxicab driver, who knew Dawson personally, also testified. He explained that he drove him home that night and thought that Dawson was acting unusual. He thought Dawson might have been intoxicated because he staggered when getting in and out of the taxi-cab, but was perplexed by Dawson's atypical quietness — he explained that Dawson was normally talkative and jocular when intoxicated.
 {¶ 39} Dr. Uptegrove also testified that staggering is a symptom of a subdural hematoma.
 {¶ 40} Several witnesses who knew Dawson personally testified that, since the night of the fight, they had not seen him. They testified that he broke with routine and was not seen at the places he regularly frequented.
 {¶ 41} Four days later, Dawson was found dead in his apartment wearing the same clothes he had been wearing on the night of the fight. There were no signs of a struggle in the apartment. Rather, it looked as if Dawson had sat down, taken off his shoes, and died.
 {¶ 42} Further, evidence was introduced that Dawson had gone shopping for food the day before he got into the fight. This food was found virtually untouched.
 {¶ 43} As we noted earlier, causation, in this case, is a determination properly left to the fact-finder. See, generally, Cremeansv. Willmar Henderson Mfg. Co., 57 Ohio St.3d 145, 566 N.E.2d 1203; Sigmanv. Gen. Elec. Co., 77 Ohio App.3d 430, 602 N.E.2d 711. We find that the foregoing evidence establishes that the state presented sufficient circumstantial evidence on the issue of causation. See State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492. As the state aptly noted in its brief to this Court, "[t]he State's case was not based upon Dr. Uptegrove proving that O'Connell was the one who hit Dawson in the head.The case was proven with the circumstantial evidence of Dawson's lastknown movements through numerous other witnesses." (Emphasis added.).
 {¶ 44} Thus, it cannot be said that, after viewing the evidence in the light most favorable to the state, a rational trier-of-fact could not have found causation beyond a reasonable doubt. See State v. Johnson,88 Ohio St.3d at 112, 723 N.E.2d at 1054. Accordingly, it follows that O'Connell's trial counsel was not deficient in electing to proceed as he did in this regard.
 2. Hearsay {¶ 45} O'Connell maintains that Dr. Uptegrove impermissibly conveyed to the jury the opinion of one of his colleagues who believed Dawson's injuries occurred within two weeks of the date he was discovered deceased. We find O'Connell's argument in this regard to be utterly without merit.
 {¶ 46} O'Connell states in his brief the following: "In fact, Dr. Uptegrove offered no opinion on the matter in question. Instead, he reported the uncertain and unsupported opinion of an unnamed neuropathologist and concluded that, even with that opinion in mind, he could not offer an opinion on the length of time the subdural hematoma had been present in James Dawson's head * * *."
 {¶ 47} Thus, assuming arguendo that this was in fact inadmissible hearsay, O'Connell, by his own admission, concedes that this testimony was harmless because Dr. Uptegrove discounted it. See State v. Sheppard,91 Ohio St.3d 329, 2001-Ohio-52, 744 N.E.2d 770, citing State v.Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. We see no need to address this argument further.
 3. "Acquittal First" Jury Instructions and Verdict Forms {¶ 48} O'Connell argues that the jury instructions and verdict forms violate Ohio's prohibition against instructions requiring the jury to unanimously acquit the defendant of the indicted offense before considering a lesser-included offense. See, generally, State v. Thomas
(1988), 40 Ohio St.3d 213, 533 N.E.2d 286. We disagree.
 {¶ 49} In support of this contention, O'Connell essentially argues that the instructions were inappropriate because the language implied a requirement of unanimity, and required the jury to find the defendant not-guilty of the indicted offense before proceeding to deliberate on the lesser-included offense.
 {¶ 50} The Supreme Court of Ohio, in State v. Allen (1995),73 Ohio St.3d 626, 653 N.E.2d 675, considered instructions similar to those currently at issue. In Allen, like in the case sub judice, the jury was instructed to consider a lesser-included offense only after finding the defendant not guilty of the indicted offense.
 {¶ 51} The Allen Court determined that this instruction did not amount to a prohibited "acquittal-first" instruction. Instead, the court found that the instruction merely required the jury to first find the defendant not guilty, and then proceed with their deliberations and determine whether the defendant is guilty of the lesser-included offense.
 {¶ 52} While these instructions may not have been ideal, we find that they are not in violation of Ohio's prohibition against acquittal-first instructions. Accordingly, it follows that O'Connell's trial counsel was not deficient for failing to object to the use of these instructions and verdict forms.
 4. Dictionary {¶ 53} O'Connell argues that it was error for the trial court to permit the jury to use a dictionary to look up the word "likely." We disagree.
 {¶ 54} In support of his argument, O'Connell cites to cases from Florida, New Jersey, and New Hampshire, but conveniently omits the numerous cases from Ohio which have rejected such arguments on the basis that any such error would be harmless. See, e.g., Bell v. Mt. Sinai Med.Ctr. (1994), 95 Ohio App.3d 590, 643 N.E.2d 151; State v. Fleming (Aug. 2, 1991), Erie App. No. E-90-16; Cameron v. Alba Ski Sport Hut,Inc. (Aug. 7, 1986), Franklin App. No. 85AP-1018.
 {¶ 55} We fall in line with the Ohio case law. Indeed, O'Connell has presented us with no meaningful basis as to how the definitional meaning of the word "likely" could have prejudiced his case. Accordingly, it follows that O'Connell's trial counsel was not deficient for failing to object to the jury's request for a dictionary.
 {¶ 56} In sum, we overrule O'Connell's First, Second, Third, Fourth, Fifth, and Sixth Assignments of Error.
 B. R.C. 2929.14(B) {¶ 57} O'Connell argues in his Seventh Assignment of Error that "[t]he trial court erred when it sentenced * * * O'Connell to more than the minimum prison sanction without making the findings required by R.C.2929.14(B)." Again, we disagree.
 {¶ 58} An appellate court will not reverse a sentence unless the court finds by "clear and convincing evidence" that the sentence is unsupported by the record or contrary to law. See R.C. 2953.08(G)(2)(a) and (b). The clear-and-convincing-evidence standard is an intermediate standard, representing a degree of proof that is "more than a preponderance of the evidence; * * * less extensive than `beyond a reasonable doubt'; and * * * adequate to produce in the trier of facts a firm belief as to the facts to be established." State v. Lenegar, supra; see State v. Schiebel, 55 Ohio St.3d at 71, 564 N.E.2d at 54.
 {¶ 59} With this standard in mind, we will address O'Connell's specific argument.
 {¶ 60} O'Connell directs us to an exchange between counsel for the state, and the trial court, in which counsel reminded the trial court that it had to consider R.C. 2929.14(B) before sentencing O'Connell because the trial court was imposing a sentence greater than the minimum. The trial court then went through those factors. However, O'Connell maintains that this was merely a rote recitation of the required language, and not a meaningful consideration of the factors.
 {¶ 61} This argument is without merit because all that R.C.2929.14(B) requires is for "the record of the sentencing hearing [to] reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted a longer sentence[, however] R.C. 2929.14(B) does not require that the trial court give its reasons for its [statutory] findings." State v. Edmonson
(1999), 86 Ohio St.3d 324, 715 N.E.2d 131.
 {¶ 62} In the instant case, the trial court recited the factors to be considered in sentencing, and in doing so, found one of the R.C.2929.14(B) factors applied: "the Court finds, pursuant to [R.C.2929.14(B),] that the shortest prison term possible would demean the seriousness of the offense, and would not adequately protect the public, and therefore, imposes the greater term. I mean, it would demean the seriousness of the offense to impose the minimum term." As the Supreme Court of Ohio explained in Edmonson, this is all that is necessary. See, generally, State v. Hollander (2001), 144 Ohio App.3d 565, 760 N.E.2d 929.
 {¶ 63} Moreover, we are simply unwilling to accept O'Connell's invitation to divine what the trial court was thinking when it went through the factors set forth in R.C. 2929.14(B).
 {¶ 64} Accordingly, we find the trial court did not err in imposing more than the minimum sentence and we overrule O'Connell's Seventh Assignment of Error.
 III. Conclusion {¶ 65} For the foregoing reasons, we overrule O'Connell's assignments of error and affirm the judgment of the Washington County Court of Common Pleas.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the WASHINGTON COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY DAYS UPON THE BAIL PREVIOUSLYPOSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Kline, J.: Concur in Judgment Only.
[2] {¶ a} The following is a useful explanation of a subdural hematoma.
{¶ b} "When a person receives a severe blow to the head, the brain bounces within the cavity. This movement of the brain structures may cause shearing or tearing of the blood vessels surrounding the brain. When the blood vessels tear, blood accumulates within the space between the brain and the dura[, which is a tough, leathery outer covering that protects and nourishes the brain]. This is known as a subdural hematoma * * *, or blood clot in the brain. When the blood accumulates between the dura and the brain, swelling of the brain occurs. There is no extra room within the skull to allow for the brain to swell and for the blood to accumulate. The only way the brain can compensate is to shift the delicate structures out of the way. This can cause pressure on vital functions, such as eye opening, speech, level of awakeness (or consciousness) or even breathing." University of Missouri Health Care, Subdural Hematoma (last modified Feb. 15, 2001)http://www.muhealth.org/~neuromedicine/subdural.shtml`.
[3] {¶ a} We note that, "[i]n order to preserve the right to appeal the sufficiency of evidence upon which a conviction is based, a defendant must timely file a Crim.R. 29 motion for acquittal with the trial court." State v. Perry (Aug. 29, 1997), Trumbull App. No. 94-T-5165; see State v. Roe (1989), 41 Ohio St.3d 18, 535 N.E.2d 1351. Accordingly, "if a Crim.R. 29 motion is not made by a defendant, he or she waives any sufficiency of evidence argument on appeal." Perry, supra; see, generally, State v. Swanner (May 18, 2001), Scioto App. No. 00CA2732.
{¶ b} Here, the record reveals that O'Connell did not file a Crim.R. 29 motion for acquittal with the trial court. Accordingly, O'Connell has waived any sufficiency-of-evidence argument on appeal. SeePerry, supra; Roe, supra.
{¶ c} O'Connell, however, argues that this is yet one more instance of how his trial counsel was deficient. In support of this contention, O'Connell makes the bald assertion that, "There is no conceivable strategic reason to fail to make that motion." We find this supposed argument troublesome.
{¶ d} Attorneys simply are not required to file motions as a matter of course. Rather, they are to use their discretion and best judgment to strategically litigate a case. One obvious reason why an attorney might elect to not file a motion for acquittal is the simple fact that the judgment of the trial court and jury was supported by the evidence. The filing of frivolous motions is never in the best interest of an attorney's client.
{¶ e} Notwithstanding the foregoing, we will proceed to address the merits of O'Connell's argument in an effort to determine whether it truly was deficient performance for his trial counsel to proceed as he did.