CREMEANS ET AL., APPELLEES, *v.* WILLMAR HENDERSON MANUFACTURING
COMPANY, A DIVISION OF WAYCROSSE, INC., APPELLANT, ET AL.

[Cite as Cremeans *v.* Willmar Henderson Mfg. Co. (1991),
57 Ohio St. 3d 145.]

(No. 89-1797—Submitted November 19, 1990—Decided February 6, 1991.)

146

*Plymale & Associates* and *Stephen D. Plymale,* for appellees.

*Squire, Sanders & Dempsey* and *William A. Klatt,* for appellant.

*Frank A. Ray, Casper & Casper* and *Michael R. Thomas,* urging affirmance for *amicus curiae,* Ohio Academy of Trial Lawyers.

DOUGLAS, J. The first issue

presented by this appeal is whether the defense of assumption of risk bars Cremeans from recovery on his products liability claim against Willmar based upon strict liability in tort. Cremeans will be barred from recovery on his claim if he voluntarily and unreasonably assumed a known risk posed by the defective[1] product manufactured by Willmar. *Onderko* v. *Richmond Mfg. Co.* (1987), 31 Ohio St. 3d 296, 31 OBR 576, 511 N.E. 2d 388, syllabus.

The defense of assumption of risk is a product of laissez-faire economics and evolved in master and servant cases. See *Williamson* v. *Smith* (1971), 83 N.M. 336, 338, 491 P. 2d 1147, 1149. The doctrine was judicially developed in response to the great impulse of the common-law courts "* * * to insulate the employer as much as possible from bearing the 'human overhead' which is an inevitable part of the cost — to someone — of the doing of industrialized business. The general purpose behind this development in the common law seems to have been to give maximum freedom to expanding industry." (Footnotes omitted.) *Tiller* v. *Atlantic Coast Line R.R. Co.* (1943), 318 U.S. 54, 59.

At common law, an employer's liability was shielded by defenses such as assumption of risk based upon an economic theory that there was complete mobility of labor, and that the supply of work was unlimited. Prosser & Keeton, Law of Torts (5 Ed. 1984) 568-569, Section 80. Therefore, a worker was viewed as an entirely free agent not compelled to enter into a particular employment relationship. *Id.* at 568. Thus, a person who entered into an employment relationship was deemed to accept all the usual and known risks of the chosen trade, thereby relieving the employer of any duty to protect the employee from the dangers of employment. *Id.*

In more recent years, the doctrine of assumption of risk has been sharply criticized in its application to claims based upon injuries sustained in the workplace. In *Siragusa* v. *Swedish Hospital* (1962), 60 Wash. 2d 310, 373 P. 2d 767, the Supreme Court of Washington made the following observation in abolishing assumption of risk as a defense for an employer whose actions result in injury to an employee:

"The policy reasons which gave rise to the doctrine of assumption of risk in the master-servant area * * * no longer suffice to support the harsh effects upon injured employees who seek redress for their employer's negligence. Public opinion, reflected in workmen's compensation legislation, has dictated a change in the underlying concepts of employer's [*sic*] responsibility. In almost all areas of industrial activity, social insurance has replaced the common law rules of liability and defenses which grew out of the judicial inclination to foster a growing economy. No longer can it be said that a judicially-imposed doctrine of assumption of risk is necessary or desirable to protect expanding industry from being crippled by employers' responsibility for tortious conduct toward their employees.

"To bar recovery when the employee is acting reasonably in exposing himself to a known and appreciated risk is to indulge in the unrealistic and rigid presumption that,

---

[1] The issue of defective manufacture or design is not before this court. Given the procedural disposition of this case, we assume, for purposes of this appeal, that the lack of protective structures or a protective cage constitutes a manufacturing defect.

in so exposing himself, the employee 'assents' to relieve his employer from his responsibility to furnish a safe place in which to work. Such a presumption has no basis in experience, and is not founded upon any current social policy. The existence of such a notion has been soundly rejected by the courts which have carefully analyzed the matter." *Id.* at 318, 373 P. 2d at 773.

In *Williamson, supra,* the Supreme Court of New Mexico abolished assumption of risk as a defense in that state and made the following observations with regard to the application of the defense to claims involving injuries sustained in the employment relationship:

"The reasonableness of insulating business from human overhead, however valid it may have been during the moment of the industrial revolution, now runs directly counter to current social policy, as typified by the underlying theory of modern workmen's compensation legislation, both general and specifically in regard to the safety of work areas. * * * Widespread availability and use of liability and workmen's compensation insurance by employers have now met the need in any case.

"Finally, in the employer-employee frame of reference, the concept of assumption of risk is one hundred eighty degrees out of phase with our legal policy of requiring the employer to provide his employees with a reasonably safe place to work. * * *

"For either some or all of these reasons, there is a movement in this country either to restrict this defense or eliminate it completely. * * *" (Citations omitted.) *Id.* at 339, 491 P. 2d at 1150.

Dean Prosser has recognized that the limitation of an employer's respon-sibility at common law was judicially created upon the basis of old industrial conditions, and a social philosophy and attitude toward labor which are "long since outmoded." Prosser & Keeton, *supra,* at 568. According to Prosser, the view that an employee assents to relieve his employer of liability based upon the theory that an employee is completely free to forgo the employment entirely disregards "[t]he economic compulsion which left * * * [the employee] no choice except starvation * * *." *Id.* See, also, Prosser & Keeton, *supra,* at 490-498, Section 68.

Many courts in recent years have moved away from the strict common-law application of the doctrine of assumption of risk in the employment context by realizing that an employee does not voluntarily or unreasonably assume the risks of employment simply by accepting employment or by performing required job duties. See, *e.g., Johnson* v. *Clark Equip. Co.* (1976), 274 Ore. 403, 414, 547 P. 2d 132, 140-141 (Working conditions and related circumstances have a strong influence on the decision to encounter a job-related danger. Fear of dismissal and the prospect of finding new employment could make a decision to encounter a known risk reasonable.); *Suter* v. *San Angelo Foundry & Mach. Co.* (1979), 81 N.J. 150, 167, 406 A. 2d 140, 148 (Employee has no meaningful choice but to encounter risks in his employment and, thus, cannot voluntarily assume the risk of injury.); *Brown* v. *Quick Mix ·Co.* (1969), 75 Wash. 2d 833, 836, 454 P. 2d 205, 208 ("It could never be said as a matter of law that a workman whose job requires him to expose himself to a danger, voluntarily and unreasonably encounters the same."); *Beacham* v. *Lee-Norse* (C.A. 10, 1983), 714 F. 2d 1010, 1014-1015 (Worker did not voluntarily encounter a danger simply by perform-

ing his duties.); *Rhoads* v. *Service Mach. Co.* (E.D. Ark. 1971), 329 F. Supp. 367, 381 ("The 'voluntariness' with which a worker assigned to a dangerous machine in a factory 'assumes the risk of injury' from the machine is illusory."); *Kitchens* v. *Winter Co. Bldrs., Inc.* (1982), 161 Ga. App. 701, 703, 289 S.E. 2d 807, 809 ("Any construction worker as a servant and employee has a certain amount of his freedom of choice restricted by the circumstances under which he works and the coercion of seeking to remain employed.); and *Scott* v. *Dreis & Krump Mfg. Co.* (1975), 26 Ill. App. 3d 971, 990, 326 N.E. 2d 74, 87 ("In situations where the nature of plaintiff's employment requires exposure to certain hazards, it would be a *non sequitur* of the policy considerations of strict tort liability to say that plaintiff has voluntarily and unreasonably assumed such hazards by the mere acceptance of his employment.").

With the foregoing discussion in mind, we believe that the time has come for Ohio to realize that the days of laissez-faire economics are long gone, and that the industrial revolution is no longer with us. Today, an employee must either accept the dangers of his or her job or face the prospect of finding new employment in an economic setting where the supply of work has become increasingly limited. Ohio should now move into the Twentieth Century and join the ranks of the growing number of state and federal courts that have ruled on the question. The trend in this country set by the jurisdictions which have carefully analyzed the issue is that the defense of assumption of risk in the employ-

ment setting is no longer valid. See Comment, Employees' Assumption of Risk: Real or Illusory Choice? (1984), 52 Tenn. L. Rev. 35. Accordingly, common sense dictates, and we so hold, that an employee does not voluntarily or unreasonably assume the risk of injury which occurs in the course of his or her employment when he or she must encounter that risk in the normal performance of his or her required job duties and responsibilities.[2] We realize that our holding "abolishes" assumption of risk in the employment setting in the sense that the defense of assumption of risk is unavailable for certain claims arising from work-related injuries. To that extent, we are in complete agreement with the conclusion of one commentator on this issue, and we can state it no better than she did in writing that:

"The decision to abolish assumption of risk in the employment setting is grounded in economic reality and a sense of humanity consistent with present social policy. Since assumption of risk is a judicial creation, the courts should take responsibility for removing the doctrine from areas in which it plays no useful or just function. The employment setting is one of these areas, and in the face of increasing numbers of work-related injuries, courts should eliminate the doctrine as an anachronism." Comment, *supra,* at 65.

Furthermore, the abrogation of the defense of assumption of risk in the context of work-related injury claims is not a foreign concept in Ohio. In *Prentiss* v. *Kirtz* (1977), 54 Ohio App. 2d 56, 59, 8 O.O. 3d 59, 61, 374 N.E. 2d 429, 431, the court held that:

"Where a person, by reason of

---

[2] However, an employee may voluntarily and unreasonably encounter a known risk when the employee intentionally causes his or her own injury.

economic necessity, is compelled to work on a machine defectively designed which proximately causes him injury during such operation, his mere exposure to such dangerous place does not constitute contributory negligence or assumption of the risk on his part as a matter of law."

The record in this case demonstrates that Cremeans encountered the risks associated with the use of the Willmar loader because he was required to do so in the normal performance of his job duties and responsibilities and that Cremeans was injured during the execution of such duties and responsibilities. Therefore, his assumption of the risk was neither voluntary nor unreasonable and, hence, applying *Onderko, supra,* Cremeans is not barred from recovery on his products liability claim based upon strict liability in tort. This is so regardless of the fact that it was Cremeans's employer, and not Willmar, who required Cremeans to perform the particular job duty which resulted in the injury. Given the facts of this case, to wit, that Willmar knew that the loader it was selling to Sohio was not equipped with a necessary safety device and, in fact, demanded indemnity from Sohio before agreeing to make the sale, the issue is even clearer.

Willmar sold the loader to Cremeans's employer without protective structures or a protective cage. The loader could not have been used by Cremeans in the performance of his job duties had the protective structures or cage been attached to the loader. Thus, Cremeans was put at risk either solely as a result of the product defect, or by the combination of the defect and the conduct of Cremeans's employer, Sohio. In either event, the economic pressures associated with the reality of today's workplace inevitably came to bear on Cremeans's decision to encounter the risk. As such, we believe that it would be incongruous to conclude that the defense of assumption of risk should be available to Willmar and not to Cremeans's employer when the decision to encounter the risk was equally involuntary regardless of who commissioned the employee to perform his or her job duty. Further, many of the cases and commentaries dealing with the issue of assumption of risk do not distinguish between employers and manufacturers with respect to the availability of the defense in the employment context. See, *e.g., Johnson, supra; Suter, supra; Brown, supra; Scott, supra; Kitchens, supra;* and Comment, *supra;* Note, Torts—Products Liability—The Open and Obvious Nature of a Design Defect Does Not Necessarily Preclude Manufacturer's Liability (1971), 49 Tex. L. Rev. 591, 595; and Noel, Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk (1972), 25 Van. L. Rev. 93, 127 ("It would seem that when a manufacturer supplies a dangerous machine for use by employees, the workman injured because of the unsafe design is subject to comparable economic pressure and that his consent to use the dangerous machine, perhaps in order to retain his job, is likewise not free and voluntary.").

Willmar suggests that Comment *b* to Section 496E of the Restatement of the Law 2d, Torts (1965), supports its position that Cremeans's decision to encounter the risk associated with the use of the Willmar loader was voluntary.

We disagree. Section 496E provides:

"(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk.

"(2) The plaintiff's acceptance of a risk is not voluntary if the

defendant's tortious conduct has left him no reasonable alternative course of conduct in order to

"(a) avert harm to himself or another, or

"(b) exercise or protect a right or privilege of which the defendant has no right to deprive him." *Id.* at 576.

Comment *b* to Section 496E provides in part:

"The plaintiff's acceptance of the risk is to be regarded as voluntary even though he is acting under the compulsion of circumstances, *not created by the tortious conduct of the defendant,* which have left him no reasonable alternative. *Where the defendant is under no independent duty to the plaintiff, and* the plaintiff finds himself confronted by a choice of risks, or is driven by his own necessities to accept a danger, the situation is not to be charged against the defendant. * * *" (Emphasis added.) *Id.*

With regard to the first sentence in Comment *b,* we have determined that the compulsion of Cremeans's circumstances was, to some degree, attributable to Willmar. Willmar provided Cremeans's employer with a defective product which made it possible for Cremeans to encounter the risk. With regard to the second sentence in Comment *b,* Willmar certainly had an independent duty to Cremeans not to place a dangerously defective product into the stream of commerce, thereby placing Cremeans at risk. Furthermore, in our judgment, Cremeans's decision to encounter the risk posed by Willmar's product was clearly "not voluntary" within the meaning of Section 496E(2).

The second issue presented by this appeal concerns the applicability of Ohio's comparative negligence statute to Cremeans's claim in negligence. (R.C. 2315.19.) Willmar contends that based upon the evidence in the record, reasonable minds could only conclude that the "* * * contributory negligence of * * * [Cremeans] in assuming the risk of his injury far exceeded the negligence, if any, of Willmar."

In *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, 6 OBR 170, 451 N.E. 2d 780, paragraph one of the syllabus, we held that "[t]he defense of assumption of risk is merged with the defense of contributory negligence under R.C. 2315.19."

Therefore, since the defense of assumption of risk is unavailable in the case at bar, so too is the defense with which it has been merged and, thus, R.C. 2315.19 is inapplicable to limit or bar Cremeans from recovery on his products liability claim based upon negligence.

Finally, Willmar raises the issue of proximate causation in its brief before this court suggesting that the proximate cause of Cremeans's injury was Cremeans's decision to encounter the risk and Sohio's decision to use the product in the environment in which it was put to use. The trial court did not address the issue of proximate causation in granting Willmar's motion for summary judgment, and the court of appeals did not address this issue in its opinion. Likewise, we will not address the issue but note, in passing, that the cause of Cremeans's injury is a jury question.

The judgment of the court of appeals is affirmed and this cause is remanded for further proceedings consistent with this opinion.

*Judgment affirmed
and cause remanded.*

SWEENEY, J., concurs.

H. BROWN and RESNICK, JJ., concur in the syllabus and judgment only.

WRIGHT, J., concurs in part and dissents in part.

MOYER, C.J., and HOLMES, J., separately dissent.

H. BROWN, J., concurring. I concur in the syllabus and judgment. Further I believe that the great weight of authority, as cited in the lead opinion, supports the proposition (embodied in the syllabus) that assumption of risk does not operate against an employee who is *required* by his employer to use a defective product.

However, I part company from the suggestion in the lead opinion, and in some of the authorities cited therein, that assumption of risk is no longer a defense where a product is used by an employee in the employment setting. The focus should not be directed to the setting where the injury occurs, but to whether the employee has voluntarily assumed the risk of using the defective product. In employment situations, there will be cases where the employee has elected to use a defective product and those where the use of a defective product has been forced upon the employee by economic necessity. In the first instance, assumption of the risk should remain a defense; in the latter it should not.

I further believe that the focus must be on the behavior of the employee. If the employee has not *voluntarily* assumed the risk, the person or company who has put a defective product into the stream of commerce is not entitled to assert the defense of assumption of risk. It should make no difference whether the lack of *voluntary* assumption stems from (1) conduct by the manufacturer of the defective product, (2) conduct by the employer, or (3) some other source such as unavoidable

emergency. Volition is the touchstone. The issue is whether the plaintiff voluntarily placed himself at risk. If he did not, the defense of assumption of risk loses its basis in logic. When one is forced to undertake a risk, the risk has not been voluntarily assumed.

To me none of the above represents new law or a departure from the established law of torts. My position is succinctly stated by Section 496E, Restatement of the Law 2d, Torts (1965), in part, to wit:

"(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk."

In the case before us there is a genuine issue of fact with respect to whether Cremeans voluntarily assumed the risk which caused his injury. Accordingly, I would affirm the decision of the Court of Appeals for Union County.

WRIGHT, J., concurring in part and dissenting in part. I concur with the majority's decision to remand this case, but I find the rationale for that decision, with its attendant high dudgeon, misplaced. I must vigorously dissent from syllabus law that would turn a manufacturer into a virtual insurer of its product in the workplace. Further, the decision emasculates our holding in *Onderko* v. *Richmond Mfg. Co.* (1987), 31 Ohio St. 3d 296, 31 OBR 576, 511 N.E. 2d 388, even as the plurality purports to cite it as controlling authority.

The plurality succinctly states the issue in its opening paragraph, referring to *Onderko*. It then takes a quantum leap backwards into the Nineteenth Century and launches into a diatribe about masters and servants and the horrors of laissez-faire economics.[3] The discourse may be in-

---

[3] The thesis for laissez-faire economics follows:

(1) Laissez-faire leads to such a stabilization of prices as results in the max-

structive from a historical perspective, but it is not relevant to this case.

The plurality acknowledges that the plaintiff here did not work for the defendant. Where, then, is the need for a treatise on the evils of the assumption-of-the-risk defense as a tool of oppressive employers? Most of the precedent cited by the plurality rails at this straw man.[4] Even the cases that the plurality cites involving third-party manufacturers in products liability cases *do not* stand for the proposition that assumption of the risk is an "anachronism" when it is used in a workplace setting.

For example, in *Johnson* v. *Clark Equip. Co.* (1976), 274 Ore. 403, 547 P. 2d 132, the Oregon Supreme Court remanded a defendant's verdict to the trial court because it found the jury instructions on assumption of the risk were not thorough enough. *Johnson, supra,* at 412, 547 P. 2d at 139-140. While the court found working conditions to be a relevant factor in assessing whether acceptance of a job-related danger was reasonable, it did *not* eliminate the defense as the plurality would have one believe in the case at bar.

In *Scott* v. *Dreis & Krump Mfg. Co.* (1975), 26 Ill. App. 3d 971, 326 N.E. 2d 74, an Illinois appellate court concurred with the trial judge's refusal to give an assumption-of-the-risk defense instruction to the jury. The defense was not held to be a violation of Illinois public policy, merely not appropriate in that case. In *Scott,* the appellate court held: "There must, we think, be an element of conscious conduct resulting in the injury which is not satisfied by mere inadvertence or momentary inattention." *Id.* at 990-991, 326 N.E. 2d at 87. The lead opinion to the contrary notwithstanding, that language does *not* eliminate the defense in a situation where the employee had — as the plaintiff in the instant case did — an appreciation of the risks.

Even in the case that best supports the plurality, *Suter* v. *San Angelo Foundry & Mach. Co.* (1979), 81 N.J. 150, 406 A. 2d 140, the New Jersey Supreme Court stopped short of abolishing the defense of assumption of the risk. In *Brown* v. *Quick Mix Co.* (1969), 75 Wash. 2d 833, 454 P. 2d 205, the Washington Supreme Court upheld a jury instruction that the plaintiff *"could not recover if he was aware of the particular danger and voluntarily exposed himself to it * * *."* (Emphasis added.) *Id.* at 836, 454 P. 2d at 208. The dictum quoted by the lead opinion merely recites the Washington court's belief that the assumption-of-the-risk defense should be determined by the fact finder. The Georgia court of appeals, confronted with a similar situation, also had a problem with applying the doctrine *as a matter of law* because of the hardship it worked on

---

imum possible satisfaction to all participants;

(2) It results in such a disposition of the productive forces as will secure the maximum benefit from the employment; and

(3) It creates the maximum harmony between capital and labor by securing to each such a part of the common product as is equivalent to the share it has created.

13 Encyclopedia Britannica, at 598.

[4] *Williamson* v. *Smith* (1971), 83 N.M.

336, 491 P. 2d 1147, involved a plumber suing his boss and the company that dug the trench that caved in, causing plaintiff's injury. *Tiller* v. *Atlantic Coast Line RR. Co.* (1943), 318 U.S. 54, involved a railroad worker suing his employer for an injury suffered on the job. *Siragusa* v. *Swedish Hospital* (1962), 60 Wash. 2d 310, 373 P. 2d 767, involved a hospital worker suing her employer for a back injury suffered on the job.

employees. *Kitchens* v. *Winter Co. Bldrs., Inc.* (1982), 161 Ga. App. 701, 289 S.E. 2d 807. That sentiment mirrors my own belief and forms the basis for my concurrence in the judgment.

The plurality makes the point that its approach is not novel in Ohio, citing *Prentiss* v. *Kirtz* (1977), 54 Ohio App. 2d 56, 8 O.O. 3d 59, 374 N.E. 2d 429. But a thorough reading of that opinion reveals that the proposition cited by the plurality — that economic compulsion negates the assumption-of-the-risk defense — is a view held by only *one* member of the *Prentiss* court. I repeat, one! The other two judges specifically *disavowed* that portion of the opinion "relative to 'economic compulsion' or 'economic necessity' as an excuse for contributory negligence or assumption of the risk." *Prentiss, supra,* at 60, 8 O.O. 3d at 62, 374 N.E. 2d at 432. "In a day of OSHA, safety codes, management and labor safety programs, I find this tenet antiquated," Judge Potter wrote in his concurring opinion, joined by Judge Connors. "Contributory negligence was simply a proper issue for the jury." *Id.* at 60-61, 8 O.O. 3d at 62, 374 N.E. 2d at 432. Further, the case turns on whether there was sufficient evidence to create a jury question. *Prentiss, supra,* at 58, 8 O.O. 3d at 60, 374 N.E. 2d at 431. The cited language about "economic necessity" is pure dictum.

It should be clear by now that the majority's position, rather than moving Ohio into the Twentieth Century, would, instead, move the state *out of* the mainstream. What the plurality has done, through many of the cases it has cited, is point the way the state should go without leaving manufacturers bereft of a defense in such situations. The virtue of this approach is that it also remains true to the holding in *Onderko*. The assumption-of-the-risk

defense is, indeed, harsh in its application in strict liability cases, acting as it does as an absolute bar to recovery. But, as Justice Douglas himself noted in his opinion in *Onderko, supra,* at 300-301, 31 OBR at 579, 511 N.E. 2d at 392:

"* * * It must be remembered, however, that this foreclosure of recovery on a strict liability theory does not deprive an injured plaintiff of all possible remedies. A plaintiff injured by a product is not limited to the theory of strict liability as the sole means of redress. An action in negligence may also be available to compensate the plaintiff for his injury. Strict products liability and negligence are distinct theories, but they have never been regarded as mutually exclusive. * * * Nor is a plaintiff required to elect between the two theories. * * * A case in which the plaintiff alleges strict products liability may also be submitted to the fact finder on a negligence theory. * * * Thus, a plaintiff whose recovery is barred on a strict liability claim due to a finding that he assumed the risk may still recover on a negligence theory where such negligence can be proved. * * * In such a case, the plaintiff's assumption of the risk would not necessarily be an absolute bar but would merely operate to reduce his recovery, if the jury finds that such assumption of the risk amounted to fifty percent or less of the total responsibility for the injuries incurred. R.C. 2315.19; *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, 6 OBR 170, 451 N.E. 2d 780." (Citations omitted.)

As to the conclusion asserted by the author of the Tennessee Law Review comment[5] that the trend in

---

[5] Comment, Employees' Assumption of Risk: Real or Illusory Choice? (1984), 52 Tenn. L. Rev. 35.

this country is to abolish the assumption-of-the-risk defense in an employment setting, I can only say that a careful reading of her comment reveals that conclusion to be a case of the wish being father to the thought.

This so-called "trend" consists of a holding by just *one* state, New Jersey, that some employees injured on the job cannot be barred from recovery by an assumption-of-the-risk defense in a products liability suit against a manufacturer. See Annotation (1990), 75 A.L.R. 4th 538, at 603. Even New Jersey, now alone in the "forefront" of this movement, does not make its rule absolute. The New Jersey Supreme Court, in *Suter, supra,* at 167, 406 A. 2d at 148, referred to "an employee engaged at his assigned task on a plant machine." The court added, in a footnote, that: "We are not herein passing upon other situations wherein an employee may similarly be held to have had no meaningful choice." *Id.* at fn. 5.

What the comment analysis *does* reveal is that courts have been reluctant in many cases to apply the doctrine as a matter of law to preclude a jury determination of the issue. The comment makes a case for requiring trial courts to instruct juries to consider whether a worker's assumption of the risk was knowing, voluntary and unreasonable. Comment, *supra,* at 58. Further, a necessary component of that evaluation should be working conditions. (See *Johnson* v. *Clark Equip. Co.* [1976], 274 Ore. 403, 414, 547 P. 2d 132, 140, for the holding that "working conditions * * * may represent the most important motivational factors" in assessing an employee's conduct.)

Therefore, I concur in overruling the trial court's grant of summary judgment on the assumption-of-the-risk defense. But I believe the better rule would be the following:

Where a plaintiff is an employee injured on the job by a defendant-manufacturer's product and the plaintiff is not under the defendant's control, then the defendant may assert as an affirmative defense that the plaintiff knowingly, voluntarily, and unreasonably assumed the risk posed by the product and is therefore barred from recovery.

Further, since this issue is so fact-dependent, I would urge that its resolution should generally be best left to a jury. For those reasons, I vigorously dissent from the syllabus law.

MOYER, C.J., dissenting. I hereby dissent based upon the analysis of the law stated in the opinions of Justices Holmes and Wright.

HOLMES, J., dissenting. I dissent from the unsound and erratic decision reached in this case because I believe that the lead opinion's exhaustive analysis of the historical underpinnings of the defense of assumption of risk in the employer-employee relationship is entirely misplaced and it only serves to confuse the only issue which is properly before this court. That issue concerns a manufacturer's use of the defense of assumption of risk in a case where an employee charges the manufacturer with strict liability in tort. Since this court has never held that economic necessity can nullify an employer's use of the defense of assumption of risk, it is wholly inappropriate to extend the concept to negate the defense when it is raised by a manufacturer.

The proposition that economic necessity deprives the employee of volition so as to preclude the doctrine of assumption of risk has been repudiated by a number of court decisions. In *Wooten* v. *White Trucks* (C.A.5, 1975), 514 F. 2d 634, the United States Court

of Appeals, Fifth Circuit, observed that the force of the workplace seldom, if ever, offers a worker an exception to the defense of assumption of risk:

"* * * Kentucky [law, in respect to the assumption of risk defense,] has repudiated economic necessity as an excuse for encountering a known or obvious hazard unless, possibly, it is established that plaintiff has made unsuccessful outcry against his conditions of employment, so that loss of his job is the only alternative to going ahead under hazardous conditions. * * *" *Id.* at 640, fn. 17.

The Court of Appeals for the District of Columbia, in *Stancill* v. *Potomac Elec. Power Co.* (C.A. D.C. 1984), 744 F. 2d 861, in interpreting Maryland law, held that an employee who undertakes work which exposes him to obvious dangers does so voluntarily and cannot plead economic compulsion as a force which negates assumption of risk. "The mere fact that * * * [the defendants] were pursuing their livelihood is immaterial to the question whether they assumed the risk." *Id.* at 867, fn. 34.

In the case *sub judice,* the lead opinion, being result-oriented, designedly ignores remedies available to injured employees under workers' compensation, or under intentional tort law, which conceivably could be available here. Although the doctrine of assumption of risk dates back to the days of the industrial revolution, it is not necessary for Ohio to adopt an exception to this defense in the name of "economic reality," as foisted upon us by the plurality in the guise of moving Ohio law into the Twentieth Century. In the recently decided case of *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E. 2d 489, we defined "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee.[6] In order for the employee to recover, the following must be established:

"* * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within his business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty and not just a high risk; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Id.* at paragraph three of the syllabus.

While an employer may be found liable to his employee under *Van Fossen,* it was never our intention to hold manufacturers liable for the intentional torts of the employer. The unbelievably bad result of the lead opinion here is that the manufacturer becomes an insurer of his product whenever an employer coerces his workers into exposing themselves to unconscionable risk of injury.

Most notably, Comment *b* to Sec-

---

[6] The complaint in this case was filed on December 2, 1985, in Franklin County, Ohio. Subsequently, the action was removed to Union County on April 8, 1986. Depositions and other discovery matters began in Union County on June 6, 1986. Thus, any analogy to an employer's intentional torts in this case would properly be construed under *Van Fossen, supra,* since R.C. 4121.80(G), effective August 22, 1986, applies only prospectively. *Van Fossen, supra,* at paragraphs one, two, three and four of the syllabus.

tion 496E of the Restatement of the Law 2d, Torts (1965), rejects the majority's position that Cremeans may maintain a products liability suit against a manufacturer when his employer was responsible for exerting the economic pressure which negated the voluntary element of the assumption-of-risk defense. Comment *b* to Section 496E provides in relevant part:

"The plaintiff's acceptance of the risk is to be regarded as voluntary *even though he is acting under the compulsion of circumstances, not created by the tortious conduct of the defendant,* which have left him with no reasonable alternative. Where the defendant is under no independent duty to the plaintiff, and the plaintiff finds himself confronted by a choice of risks, or is driven by his own necessities to accept a danger, the situation is not to be charged against the defendant. * * *'' (Emphasis added.)

The tortious conduct of Willmar in not equipping the Willmar loader with a protective cage did not create the "compulsion of circumstances" which deprived Cremeans of voluntary action. Cremeans was neither under the direction nor subject to the control of Willmar, who merely sold the loader without its protective cage in accordance with the explicit instructions of Sohio. To the extent that there is the slightest evidence of economic coercion, it was exerted by the employer, who specifically ordered the equipment in its dangerously defective state and directed its use in the fertilizer bins.

The majority erroneously equates Willmar's actions in placing a dangerously defective product into the stream of commerce with the compulsion of Cremeans's circumstances so as to hold the manufacturer responsible under Comment *b* to Section 496E. "Compulsion of circumstances" makes the plaintiff's acts involuntary (and thereby disarms the defendant of his assumption-of-risk defense) only when this coercive force can be attributed to the defendant. Although the absence of the protective cage on the Willmar loader made entry into the fertilizer bins possible, it by no means compelled the operator to perform this hazardous chore. Comment *b* to Section 496E speaks to the defendant's specific tortious act of compelling another to involuntarily assume a risk and not to general malfeasance such as admitting a dangerously defective product into commerce.

A number of decisions from other jurisdictions have followed the reasoning of Comment *b* to Section 496E and held that the concept of economic necessity does not nullify the doctrine of assumption of the risk where the defendant did not create the compulsion which the plaintiff contends required him to assume the risk of injury. For example, in *Hedgepeth* v. *Fruehauf Corp.* (D.C. Miss. 1986), 634 F. Supp. 93, the driver of a tanker-trailer sued its manufacturer in strict liability for injuries suffered when he slipped on the oily surface of the tanker and fell. In holding that the defense of assumption of risk barred plaintiff's recovery from the manufacturer, the court rejected the argument that plaintiff's actions were involuntary because he was ordered by his employer to "either pull the tanker in its oily condition or go home for the day." *Id.* at 99, fn. 3. In *Ralston* v. *Illinois Power Co.* (1973), 13 Ill. App. 3d 95, 98, 299 N.E. 2d 497, 499, the court held that an "employee cannot exculpate himself from the legal consequences of his acts [of assuming the risk of a dangerous product] on the grounds that he is fearful of losing his job if he does not comply with his superior's orders. * * * An order from a superior 'does not make his exposure to the risk involuntary.'

*Fore* v. *Vermeer Mfg. Co.* [(1972), 7 Ill. App. 3d 346, 349, 287 N.E. 2d 526, 528]." And in *Willis* v. *Eckert Packing Co.* (1969), 21 Ohio App. 2d 117, 50 O.O. 2d 216, 255 N.E. 2d 309, where the economic coercion was created by the plaintiff's employer and not by the defendant, plaintiff's conduct in assuming the risk was nonetheless held voluntary.

Accordingly, for the reasons expressed above, I strongly dissent.