SYLER et al., Appellants,

v.

SIGNODE CORPORATION, Appellee.

[Cite as *Syler v. Signode Corp.* (1992), 76 Ohio App.3d 250.]

Court of Appeals of Ohio,
Tuscarawas County.

No. 91AP090071.

Decided April 20, 1992.

*Frank A. Ray,* for appellants.

*Thomas M. Taggart, Algenon L. Marbley* and *Gary J. Sallman,* for appellee.

---

MILLIGAN, Judge.

Appellants Doran and Ruth Ann Syler appeal a summary judgment of the Tuscarawas County Common Pleas Court in favor of appellee Signode Corporation.

### Assignment of Error

"Despite appellants' filed affidavits and deposition transcripts which submitted sworn statements of fact witnesses, parties, and appellants' engineering expert and which placed material factual and legal matters at genuine issue,

the trial court erred by sustaining appellee's dispositive motion for summary judgment."

Appellant Doran Syler began working for the Stone Creek Brick Company in 1954. In 1978, he began operating a brick packaging machine. This machine was replaced in April 1980 by a new brick packaging machine designed by appellee. The sale, supervision of installation, start-up, and initial training relating to the new machine were all performed by appellee's employees.

As part of Syler's job, he performed routine maintenance on the machine. In the interior of the machine, there was a platform from which the machine could be serviced. Syler routinely disengaged the power before entering the interior of the machine. However, if the machine was not functioning properly it was not uncommon for Stone Creek's employees to be on the interior platform while the machine was in operation.

In order to package different sizes of bricks, the machine had to be adjusted. Two or three times a day an employee would enter the interior platform to make these adjustments.

Construed most favorably to appellants, the facts are that on July 12, 1989, the machine was being used to package smaller bricks, known as "soaps." While Syler's foreman, Mickey McAfee, operated the control panel of the machine, appellant went into the interior platform to make adjustments to accommodate the soaps.

After appellant entered into the interior of the machine, he noticed bricks were beginning to slip from one of the "jigs," which are stations suspended from the carrousel-type monorail that rotates the bricks around the machine. Syler yelled to McAfee to stop the machine so that he could realign the bricks. Syler thought the power had been disengaged because the machine stopped moving. The machine normally operated in a stop-and-go manner. As Syler was attempting to adjust the bricks, the machine began moving. The moving carriage assembly pinched Syler's head against a stationary beam, causing personal injuries.

Appellants brought the instant action against the Industrial Commission of Ohio, Stone Creek Brick, appellee, and five John Doe defendants. The first three causes of action against appellee and the John Doe defendants were for strict products liability, alleging (1) defective design, (2) inadequate warning, and (3) nonconformance with a warranty. The fourth cause of action, against Stone Creek Brick and the Industrial Commission, sounded in intentional tort. The fifth cause of action was that of Ruth Ann Syler for loss of consortium. The court dismissed the Industrial Commission of Ohio as a defendant.

Appellants voluntarily dismissed Stone Creek Brick, the John Doe defendants, and the claim for nonconformance with warranty.

The subject of this appeal is the trial court's granting of summary judgment in favor of appellee on the remaining causes of action claiming defective design and inadequate warning. The trial court did not state its reasons.

## Standard of Review

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * * " Civ.R. 56(C).

In reviewing summary judgment we stand in the shoes of the trial court. The standard and evidence upon which we review summary judgment is the same as for the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212.

Because the trial court did not state its reasons for summary judgment, we address all possible bases on which summary judgment could have been granted.

## Assumption of the Risk

Assumption of the risk may be asserted as a defense of a products liability claim brought pursuant to R.C. 2307.71 through R.C. 2307.80. R.C. 2315.20(B). Thus, if Syler assumed the risk of injury, his recovery was barred for both defective design (R.C. 2307.75) and inadequate warning (R.C. 2307.-76). To bar recovery, the plaintiff must voluntarily and unreasonably assume a known risk. *Onderko v. Richmond Mfg. Co.* (1987), 31 Ohio St.3d 296, 31 OBR 576, 511 N.E.2d 388. Ordinarily, assumption of the risk is a question of fact to be decided by a jury, rendering summary judgment inappropriate. *Goodin v. Corry* (1982), 5 Ohio App.3d 178, 5 OBR 362, 450 N.E.2d 727.

In *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145, 566 N.E.2d 1203, a divided Ohio Supreme Court addressed the issue of assumption of the risk as applied to use of an alleged defective product in the

employment setting. In that case, the employee was injured while operating a loader inside a fertilizer bin. An avalanche of fertilizer caused the rear wheels of the loader to lift, wedging the employee between the seat and a solid object inside the bin. The trial court granted summary judgment on the basis of assumption of the risk. Notwithstanding the employee was aware that avalanches occurred and was concerned that the loader did not have a protective cage he continued to use the loader because it was his job. The Court of Appeals for Union County reversed and remanded the case.

The Ohio Supreme Court affirmed the remand, stating in the *Cremeans* syllabus:

"An employee does not voluntarily or unreasonably assume the risk of injury which occurs in the course of his or her employment when that risk must be encountered in the normal performance of his or her required job duties and responsibilities."

The syllabus was concurred with by four justices: Justices Douglas, Sweeney, H. Brown and Resnick.

Justices Douglas and Sweeney, concerned with the economic compulsion that triggers an employee's decision to encounter the risk in the employment setting, would make assumption of the risk virtually unavailable as a defense to a manufacturer when the user was injured in the course of his job performance. *Id.* at 150, 566 N.E.2d at 1208. Cremeans' decision to encounter the risk was not voluntary due to the economic reality of today's work place. *Id.* It would be incongruous to make the defense available to the manufacturer but not the employer, as a decision to encounter the risk is equally involuntary regardless of who commissioned the employee to perform the task. *Id.* Justices Douglas and Sweeney noted that an employee may voluntarily and unreasonably encounter a known risk when the employee intentionally causes his or her own injury. *Id.* at 149, 566 N.E.2d at 1207, fn. 2.

While Justices H. Brown and Resnick concurred in the judgment and syllabus, they parted from the reasoning of Justices Douglas and Sweeney on the proposition that assumption of the risk is not a defense where an employee uses the product in the employment setting. *Id.* at 152, 566 N.E.2d at 1209. In the employment setting, there will be cases where the employee elects to use a defective product, and cases where the employee is forced to use the product by economic necessity. *Id.* at 152, 566 N.E.2d at 1210. In the latter case, assumption of the risk is not available as a defense. *Id.* The focus is thus on the voluntariness of the employee's behavior. *Id.* Justices H. Brown and Resnick concurred in the remand, as there were genuine issues of fact with respect to the voluntariness of Cremeans' actions. *Id.*

Justice Wright concurred in the judgment, while vigorously dissenting from the syllabus. In Wright's opinion, where an employee is injured on the job by a manufacturer's product, and the employer is not under the manufacturer's control, the manufacturer may assert assumption of the risk as a complete bar to recovery. *Id.* at 155, 566 N.E.2d at 1212. Wright concurred in the remand, stating that because assumption of the risk is so fact-dependent, its resolution should generally be left to a jury. *Id.*

Chief Justice Moyer and Justice Holmes dissented, stating that to the extent there was the slightest evidence of economic coercion, it was exerted not by the manufacturer, but by the employer. *Id.* at 157, 566 N.E.2d at 1214. Therefore, summary judgment was appropriate. *Id.*

We seek to apply the syllabus in *Cremeans* consistent with the rationale of the justices.

Syler was injured while performing his job duties, as he was adjusting the bricks on a machine which he was responsible for operating. Thus, under the approach taken by Justices Douglas and Sweeney, the defense of assumption of the risk would be unavailable to the manufacturer, as Syler's decision to encounter the risk was compelled by economic forces.

Justices H. Brown and Resnick would focus on Syler's behavior to determine if there were genuinely disputed facts as to whether he acted voluntarily. In his deposition, Syler states that McAfee told him to go inside the machine to adjust it, and McAfee would stop the machine at the proper place. Syler stated that he yelled at McAfee to stop the machine so that he could realign the bricks. While Syler was not expressly told by McAfee to realign the bricks, part of his job was to keep the machine operating smoothly. Further, Syler stated that his regular practice was to yell for McAfee to stop the machine at the proper adjustment time. McAfee testified in his deposition that it was not uncommon for maintenance people to be on the inside of the machine while in operation. Under the approach taken by Justices H. Brown and Resnick, reasonable minds could differ as to whether Syler acted voluntarily or under the economic coercion of his employer.

We perceive Justice Wright to be the swing vote in *Cremeans*. Under Wright's approach, Syler acted voluntarily, as he was not under any compulsion from Signode. However, there are disputed facts as to whether he unreasonably encountered a known risk. Syler stated that he understood as a matter of common sense that he should turn off the machine before adjusting from the inside. However, he went into the machine while it was in operation at the direction of his supervisor. His practice was to yell at McAfee to stop the machine at the proper point of adjustment. McAfee stated that it was not uncommon to have someone inside the machine while it was in operation, that

he and Syler had operated the machine in this manner in the past, and that Syler had operated the control panel while maintenance people were inside the machine. In light of Wright's opinion that questions of assumption of the risk should generally be left to the jury, we believe the trial court could not properly grant summary judgment on the basis of assumption of the risk.

Our conclusion that summary judgment finding assumption of the risk is inappropriate upon these disputed facts is supported by both the syllabus in *Cremeans* and the rationale of a majority of its justices.

### Open and Obvious Danger, Inadequate Warning

### (Cause of Action No. 2)

A product is not defective due to inadequate warning as a result of the failure to warn about an open and obvious risk or a risk that is common knowledge. R.C. 2307.76(B). Syler alleges that the warning was inadequate as no warning was located at the pinch-point of the machine where appellant was injured.

Signode argues that Syler knew of the risk of entering the machine while operational and understood its moving parts. Therefore, Signode argues that the risk of being struck by the carriage was open and obvious. Syler argues that the risk of standing in the pinch-point was not open and obvious because he believed the machine had been deactivated at the moment when he encountered the risk. Viewing the facts of the accident in a light most favorable to Syler, had there been a warning at the pinch-point of the machine, it would not have prevented Syler's injury. Even had a warning been located at the pinch-point, Syler would have been in the position in which he was injured because he believed the machine had been properly deactivated. Reasonable minds could only come to one conclusion on the issue of inadequate warning, and that conclusion is adverse to Syler. The assignment of error is overruled to the extent it relates to inadequate warning, and the summary judgment as to inadequate warning is sustained.

### Design Defect

### (Cause of Action No. 1)

R.C. 2307.75 provides:

"(A) Subject to divisions (D), (E), and (F) of this section, a product is defective in design or formulation if either of the following applies:

"(1) When it left the control of its manufacturer, the foreseeable risks associated with its design or formulation as determined pursuant to division

(B) of this section exceeded the benefits associated with that design or formulation as determined pursuant to division (C) of this section;

"(2) It is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner."

Appellant submitted the affidavit of Dr. George Smith in opposition to summary judgment. In his affidavit, Dr. Smith states:

"(6) It is my opinion within a reasonable degree of engineering probability that the brick packaging machine on which Doran E. Syler was injured was manufactured defective in design in that it failed to provide for the safe operation of the machine in all modes of operation. Specifically, the machine was defective by failing to incorporate a safety guard over the moving parts of the machine which struck Doran E. Syler, by failing to incorporate a power interlock system either to deactivate the operator control panel or to interrupt the flow of energy to the machine, and/or by failing to make provision for the operator to assume control over activation of the machine while the operator is located in the interior of the machine through the installation of a safety power switch in the interior of the machine;

"(7) The defective design of the machine as manufactured violates the following standards established by the Ohio General Assembly:

"(a) when the machine left the control of its manufacturer, the foreseeable risks associated with its design exceeded the benefits associated with that design; and

"(b) it is more dangerous than an ordinary consumer (*i.e.*, user) would expect when used in an intended or reasonably foreseeable manner[.]"

This affidavit is sufficient to defeat summary judgment on the question of whether the machine was defectively designed. The assignment of error is sustained to the extent it alleges error in summary judgment on the issue of design defect.

The assignment of error is sustained in part and overruled in part. Thus the summary judgment is reversed as to Cause of Action No. 1 (Design Defect), to which the defense of assumption of the risk is available.

The judgment of the Tuscarawas County Common Pleas Court is reversed. This cause is remanded to that court for further proceedings according to law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PUTMAN, P.J., and WILLIAM B. HOFFMAN, J., concur.