EVANOFF et al., Appellants,

v.

GROVE MANUFACTURING COMPANY, Appellee. █

[Cite as *Evanoff v. Grove Mfg. Co.* (1994), 99 Ohio App.3d 339.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 93–P–0014.

Decided Nov. 14, 1994.

*Ian Robinson* and *William J. Davis*, for appellants.

*Louis M. Alcalde, Charles Brown* and *Jeffrey Brown*, for appellee.

CHRISTLEY, Judge.

This is an accelerated appeal from a final judgment of the Portage County Court of Common Pleas, in which the court granted summary judgment in favor of appellee, Grove Manufacturing Company, as to each of the two claims of appellants, Daniel and Linda Evanoff.

For approximately twelve years, Daniel Evanoff worked as a certified ironworker in the Warren–Youngstown area. During this period, Evanoff was primarily employed by Warren Engineering, a construction company. As part of his employment, Evanoff would be assigned to perform various tasks at construction sites throughout the area.

On April 11, 1984, Warren Engineering assigned Evanoff to act as a foreman at a construction site in Windham, Ohio. At this site, Evanoff and his crew of three men were to assist in the building of an addition to a small factory owned by Dresser Industries and Harbison–Walker Refractories. As part of the job, the crew had to attach two steel columns to the foundation of the addition. In performing this task, the crew used a mobile crane which had been manufactured by appellee.

The construction site was located near a set of railroad tracks. Almost directly above the tracks was a set of high-voltage electrical wires, which were still operational during the period in which the work took place. To facilitate the

installation of the columns, the crane was parked almost directly underneath the power lines on the north side of the tracks. The columns, which had been placed between the two tracks, were attached to the steel line which extended down from the boom of the crane. The operator of the crane then hoisted the column into the air and moved it over the tracks to the site of the addition. During this process, the boom of the crane was located within a short distance of the electrical wires.

The columns were moved into the addition one at a time. Evanoff attached the second column to the line by himself. However, before the operator of the crane could hoist it into the air, the column got caught on an object between the railroad tracks. Evanoff attempted to free the column. Before he could do so, a surge of electricity went down the line and into the steel column, shocking Evanoff. As a result of this shock, Evanoff fell onto the tracks. While he was lying there, one of the electrical wires broke and fell in the area of the tracks. A second surge of electricity then went through the tracks, shocking Evanoff for a second time.

As a result of this accident, Evanoff suffered serious injuries to three of his limbs. Approximately two years later, Evanoff and his wife, appellants, brought an action in Portage County against appellee and several other defendants. This first action was eventually dismissed voluntarily by appellants before any judgment could be rendered as to appellee.

In June 1989, appellants initiated the instant action. Appellee was named as the sole defendant in this second action, which was originally filed in Columbiana County. In their complaint, appellants asserted two claims sounding in negligence and strict liability. These claims were predicated upon the basic allegation that the mobile crane had been defective in two respects: (1) it had been designed improperly, and (2) it had not contained signs which could have provided notice of the fact that it had not been insulated against electrical shocks.

After answering the complaint, appellee moved for summary judgment as to each of appellants' claims. In support of this motion, appellee cited various depositions which had been taken during discovery in the first action. Once the second action had been transferred from Columbiana County to Portage County on the ground that a companion case was pending in the latter county, appellants filed a response to appellee's motion. In support of their arguments, they also cited the various depositions.

After the parties had filed additional briefs as to the merits of the motion, the Portage County trial court entered its decision dismissing the complaint. As grounds for granting summary judgment, the court found that the facts could only support the conclusion that Evanoff had assumed the risk of the injury.

In now appealing from this judgment, appellants have assigned the following as error:

"The trial court erred granting summary judgment for a manufacturer in a products liability action on the grounds of assumption of risk where the employee suffered injury in the course of the normal performance of his required job duties and responsibilities.

"The trial court erred in granting a motion for summary judgment because it failed to view the evidence in the record in a light most favorable to the Appellant, against whom the motion was filed, where the evidence and reasonable inferences therefrom would allow reasonable minds to reach alternate conclusions."

Although they have set forth two separate assignments, appellants have essentially raised one argument for consideration. They contend that the evidentiary materials they submitted with their response to appellee's motion did not support the conclusion that Daniel Evanoff had assumed the risk of possible injury in working in the vicinity of the electrical wires prior to the accident in question. This argument is well taken.

As a general proposition, the Supreme Court of Ohio has expressly held that in a products liability action based upon strict liability in tort, the voluntary and unreasonable assumption of a known risk can act as an absolute bar to recovery. *Onderko v. Richmond Mfg. Co.* (1987), 31 Ohio St.3d 296, 31 OBR 576, 511 N.E.2d 388, syllabus. However, a majority of the court has recently limited the application of this proposition in the context of work-related injuries. In *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145, 566 N.E.2d 1203, four of the justices concurred in the following syllabus:

"An employee does not voluntarily or unreasonably assume the risk of injury which occurs in the course of his or her employment when that risk must be encountered in the normal performance of his or her required job duties and responsibilities."

Like appellants in the instant case, the plaintiffs in *Cremeans* sought recovery from the manufacturer of a machine which the injured person had been using during his employment with a second company, not the manufacturer. As in this case, the claims against the manufacturer sounded in strict liability and negligence. Although the four justices who concurred in the syllabus could not agree on the extent to which the defense of assumption of risk should apply in this type of case, they clearly agreed that the defense could not be asserted by the manufacturer when the employee is *specifically required* by his employer to use the product in question.

The lead opinion in *Cremeans* essentially called for the abolition of the defense of assumption of risk in all cases involving a work-related injury. Under the logic of this opinion, the defense could no longer be asserted against an employee by either the employer or the manufacturer of a product which the employee uses during the course of his employment. This conclusion was based upon the perception of the economic reality of the modern workplace, in that since an employee cannot afford to lose his job, he must perform any task which his employer requires him to do. Under such circumstances, an employee never voluntarily assumes the risk of injury while performing his regular duties. This logic garnered the support of only two members of the *Cremeans* court, Justices A. William Sweeney and Douglas.

Although Justices Resnick and Herbert R. Brown could not agree with the logic espoused by the lead opinion, they did concur with both the syllabus and judgment. In his concurring opinion, Justice Brown emphasized that the syllabus did not constitute a departure from the established law on this point. Justice Brown further stated that while there may be instances in which an employee may be forced to use a defective product in order to keep his job, there are also instances in which an employee simply elects to use the product without any compulsion from the employer. As to the latter instances, Justice Brown concluded that the assumption of risk was still a valid defense which could be asserted by a manufacturer or the employer.

Even though it has been approximately four years since the *Cremeans* decision was rendered, the Supreme Court has not reconsidered this issue. Thus, while this area of the law is still in flux, the *Cremeans* decision must be applied in any case in which a manufacturer attempts to assert the defense of assumption of risk. Given that a majority of the *Cremeans* court would agree only that the defense can be asserted in those instances cited by Justice Brown, this court concludes that the standard set forth in his concurring opinion is the one which must be followed until the Supreme Court revisits this issue.

■ Generally, in order for the defense of assumption of risk to act as a bar to recovery of damages, the defendant must establish that the plaintiff knew of the condition, that the condition was patently dangerous, and that the plaintiff voluntarily exposed himself to the condition. *Goodin v. Corry* (1982), 5 Ohio App.3d 178, 5 OBR 362, 450 N.E.2d 727. In light of *Cremeans*, we conclude that a plaintiff in a products liability action will be deemed to have voluntarily exposed himself to a risk only when he has elected to use a defective product.

Applying this standard to the facts of this case as set forth in both parties' evidentiary materials, this court would first note that there was no factual dispute concerning whether Evanoff was required by Warren Engineering to use the crane in attaching the two columns to the addition's foundation. A review of the

depositions indicates that the day before the accident occurred, Evanoff was told by the general superintendent that a crane would be dispatched to the construction site. It is also evident from the evidentiary materials that Evanoff had no voice in determining which particular crane would be dispatched to perform the required tasks.

As to the issue of the positioning of the crane at the site, the evidentiary materials contained some depositional testimony indicating that the crane could have been placed at a different location which would have been safer than the position underneath the power lines. There was also some testimony indicating that Evanoff, as the foreman at the site, specifically rejected the crane operator's suggestion that the crane be moved to a different position.

In relation to the latter point, the evidentiary materials contained conflicting evidence concerning whether the crane could have been located in a safer position. First, during his deposition, Evanoff stated that the crane operator had never suggested that the crane be moved. Second, some depositional testimony was given indicating that the crane could not have been repositioned because the rest of the terrain around the site was uneven and consisted of gravel and dirt. Third, Evanoff testified that the crane could not have been placed on the southern side of the tracks because trucks were operating in that area.

More important, although the crane operator testified during his deposition that a safer position existed, he did not state that the risk of an accident would have been eliminated if the crane had been moved. The operator merely stated that he would have been able to see the power lines better if the crane had been repositioned.

If the evidentiary materials had conclusively established that Evanoff had chosen to keep the crane at its original position when a risk-free position was available, this court would agree that he had assumed the risk of possible injury. However, in light of the foregoing, we conclude that appellants' evidentiary materials were sufficient to raise a factual dispute as to whether Evanoff had no option but to position the crane under the lines and then proceed immediately with the work. The materials before this court do not conclusively demonstrate that Evanoff could have avoided the danger posed by the power lines by relocating the crane.

Pursuant to Civ.R. 56(C), the moving party cannot be granted summary judgment if a genuine issue of fact exists. Because such an issue existed in this case, the trial court erred in granting appellee's motion on the ground that Evanoff had assumed the risk of possible injury. However, this error would be prejudicial only if the trial court could not have properly granted the motion on another basis.

In interpreting the basic standard for determining a summary judgment motion, this court has held that in responding to a defendant's motion, the plaintiff in an action must submit evidentiary materials as to each of the issues upon which he will have the burden of proof at trial. *Bade v. Gen. Motors Corp.* (Dec. 20, 1991), Geauga App. No. 90–G–1599, unreported, 1991 WL 274499. Thus, as part of their response to the motion in this case, appellants were required to raise a factual dispute as to each element of their strict liability claim.

As was noted above, appellants' strict liability claim had two parts. Under the first part, appellants alleged that the design of the crane in question had been defective. In order to establish such a claim, a plaintiff must satisfy three elements:

"(1) [T]here was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendants; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss." *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 6, 523 N.E.2d 489, 493.

In relation to the first of the foregoing elements, the Supreme Court of Ohio held that a plaintiff can carry its burden by satisfying one of the following standards:

"[U]nder the consumer expectation standard prong, a defendant will be subject to liability if the plaintiff proves that the product design is in a defective condition because the product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner; under the risk-benefit standard prong, a defendant will be subject to liability if the plaintiff proves, by using relevant criteria, that the product design is in a defective condition because the benefits of the challenged design do not outweigh the risks inherent in such design. (*Knitz v. Minster Machine Co.* [1982], 69 Ohio St.2d 460 [23 O.O.3d 403, 432 N.E.2d 814], approved and followed.)" *Cremeans v. Internatl. Harvester Co.* (1983), 6 Ohio St.3d 232, 6 OBR 302, 452 N.E.2d 1281, syllabus.

As to the risk-benefit standard, the Supreme Court of Ohio has stated that three basic criteria must be considered in determining whether the risk of harm outweighs the benefits of the challenged design: (1) the possibility that the present design will cause an injury, (2) the severity of the possible harm, and (3) the mechanical feasibility of the new design. The court has also further indicated that the cost of the new design is a relevant factor. *Cremeans*, 6 Ohio St.3d at 234–235, 6 OBR at 304–305, 452 N.E.2d at 1283–1285.

In responding to appellee's motion in this case, appellants attached excerpts from the deposition of their expert witness. As part of this deposition,

the expert stated that in his opinion, the design of the crane had been defective because it did not have an insulated hook block. The expert further stated that this item could be integrated easily into the current design because it would merely replace the uninsulated hook block located on the end of the cable. In addition, the expert testified that not only was the use of an insulated hook block cheaper than other methods of insulating the crane, but that it also would have stopped the flow of electricity before it reached the column Evanoff was holding.

Although appellants' expert did not address all of the factors which must be considered under the risk-benefit standard, his testimony did indicate that the use of an insulated hook block was mechanically feasible and would not be as expensive as other methods of insulating the crane. While this testimony might not be sufficient to carry the burden of proof at trial, this court concludes that it was sufficient to raise a factual dispute as to whether the crane was defective under the risk-benefit standard. Moreover, since the expert's testimony also raised a factual dispute as to the second and third elements of a defective design claim, summary judgment would not have been appropriate regarding this part of appellants' strict liability claim.

Under the second part of their strict liability claim, appellants alleged that the crane had also been defective because it did not have signs warning a person of the danger of using the crane in the vicinity of power lines. In relation to this type of strict liability claim, the Supreme Court of Ohio has expressly held that the standard for determining liability is the same as that in a negligence action:

"In a products liability case, where there are allegations of failure to warn, or failure to adequately warn, there will be no liability unless it be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public." *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 556 N.E.2d 1177, paragraph two of the syllabus.

As a part of his depositional testimony, appellants' expert stated that although the crane had an instructional sign, this sign did not contain any warning as to the dangers posed by power lines. The expert further stated that the crane did not have the warning sign which is recommended under certain industry guidelines. Again, while this testimony is not conclusive, it was sufficient to raise a factual issue concerning whether appellee's failure to place a warning sign on the crane was unreasonable under the *Crislip* standard.

Pursuant to the foregoing analysis, we conclude that in responding to appellee's summary judgment motion, appellants' evidentiary materials were sufficient to raise a factual dispute as to each of the elements in both parts of their strict liability claims. Moreover, since appellants' negligence claim was based upon the same allegation as the strict liability claim, we further conclude that these

materials were sufficient to meet their burden as to the elements of this claim, too. Thus, as the trial court erred in granting appellee's summary judgment motion, appellants' two assignments of error are both well taken.

The judgment of the trial court is reversed, and the action is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., and NADER, J., concur.